**KLESTADT WINTERS JURELLER**
**SOUTHARD & STEVENS, LLP**
Tracy L. Klestadt
Stephanie R. Sweeney
Maeghan J. McLoughlin
200 West 41st Street, 17th Floor
New York, New York 10036
Tel. (212) 972-3000
Fax. (212) 972-2245

*Proposed Attorneys for the Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| A. L. Eastmond & Sons, Inc., <u>et al.</u>[1] | Case No. 15-12314 |
| Debtor. | Joint Administration Requested |

**AFFIDAVIT OF ARLINGTON LEON EASTMOND, JR., PRESIDENT OF**
**THE DEBTORS PURSUANT TO LOCAL BANKRUPTCY RULE 1007-2**

STATE OF NEW YORK      )
                                          ) ss:
COUNTY OF NEW YORK  )

Arlington Leon Eastmond, Jr., being duly sworn, deposes and states, as follows:

1.      I am the President of A. L. Eastmond & Sons, Inc. ("<u>AL Eastmond</u>"), Easco Boiler Corp. ("<u>Easco</u>") and Eastmond & Sons Boiler Repair & Welding Service, Inc. ("<u>Eastmond & Sons</u>"), the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>").

---

[1] The Debtors in these cases, along with the last four digits of their federal tax identification numbers are (i) A. L. Eastmond & Sons, Inc. (6359); (ii) Easco Boiler Corp. (2409); and (iii) Eastmond & Sons Boiler Repair & Welding Service, Inc. (3471).

2.      In accordance with S.D.N.Y. Local Bankruptcy Rules ("L.B.R.") 1007-2, I submit this affidavit ("Affidavit") in connection with the order for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") filed by the Debtors in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") on December 1, 2015 (the "Petition Date") and in support of the Debtors' other pleadings.

3.      I am generally familiar with the business and financial condition of the Debtors. In making any and all financial representations in this Affidavit, I am relying on my own personal knowledge and on financial statements and other financial information as compiled, prepared and/or submitted to me by other officers or employees of the Debtors.  Unless otherwise indicated, all financial information contained herein is presented on an estimated and unaudited basis.

4.      If I were called to testify, I would testify competently to the facts set forth herein, and I am authorized to submit this Affidavit on behalf of the Debtors.

**I.      Required Contents of Affidavit**

A.  Nature of Debtors' Business and Circumstances Leading to Bankruptcy Filing

(i)  Nature of the Business

5.      A. L. Eastmond & Sons, Inc. was founded by Arlington Eastmond in New York City in 1925 and incorporated in 1948 as a welding and boiler repairs specialist. Since then, the company has grown into a multi-dimensional full service leader in the heating, ventilation and air-conditioning ("HVAC") industry under the leadership of its President Arlington Leon Eastmond, Jr.

6.      Eastmond & Sons was formed in 1982, and Easco was formed in 1988. The Eastmond group of companies remains family owned and operated and has established its name through its mission statement, "excellence through perseverance and dedication."

2

7.     The Debtors offer one-stop boiler construction, repair and installation services in the public and private markets. The Debtors employ approximately 100 people with over 100 years of combined experience in the HVAC industry. The Debtors' management team is diversified in various fields, including custom boiler fabrication, ASME (American Society of Mechanical Engineers) shop built or field erected tanks, oil spill and tank cleaning, and mobile temporary boiler rental services. Sales, engineering and installation departments work closely with clients from start to finish of each boiler project.

8.     Easco's repairs department provides repair service such as welding repairs; boiler tube replacements; combustion chambers repairs and replacements; hot water coil or mixing valve repairs and replacements; steam, water and relief valve replacements; steam, water line piping repairs and installation; breeching, chimney repairs and replacements; and sectional boiler repairs and installations.

9.     The Debtors have provided products and services in over 15,000 locations throughout the tristate area and beyond, including Yankee Stadium, the Trump Towers, Kings County Supreme Court, New York Botanical Garden/Bronx Zoo, Queens County Civil Court, North Shore University, Detroit School District, the Garfield Park Field House in Chicago, Illinois, and the National Geographic Building in Washington, D.C., to name a few.

(ii) <u>Circumstances Leading to Bankruptcy Filing</u>

a.    Pre-petition Secured Credit Agreement and Foreclosure Action

10.     The Debtors are parties to certain pre-petition secured financing agreements with CCHP, LLC (as assignee of Stabilis Fund, II, LLC, as assignee of Sovereign Bank, the "<u>Secured Lender</u>"), as further described in the Debtors' Cash Collateral Motion (as defined below) (collectively, as amended, supplemented and otherwise modified from time to time, the "<u>Pre-</u>

petition Secured Credit Agreement"), in the outstanding amount as of the Petition Date of approximately $11,973,346.75, including legal fees.

11.     As of the Petition Date, the Pre-petition Secured Credit Agreement is secured by:

a.     four parcels of real property owned by AL Eastmond: (i) 1200 Oak Point Avenue (a/k/a 437 Casanova St.), Hunts Point, Bronx, New York, (ii) 1173-1175 Leggett Avenue, Hunts Point, Bronx, New York, (iii) 1190 East 156th Street, Hunts Point, Bronx, New York, and (iv) 1173 Grinnell Place, Hunts Point, Bronx, New York (collectively, the "Estate Collateral Properties");

b.     one (1) parcel of real property owned by the Debtors' President, Arlington Leon Eastmond, Jr., individually, located at 1225 Randall Avenue, Hunts Point, Bronx, New York ("Randall" and, together with the Estate Collateral Properties, the "Collateral Properties"); and

c.     personal property of the Debtors and, to a limited extent, Arlington Leon Eastmond, Jr. personally, pursuant to guaranties, UCC-1 financing statements and collateral assignments of rents and leases (collectively, together with the Collateral Properties, the "Collateral").[2]

12.     In or around December 2009, the Debtors suffered from a lack of liquidity and declining revenue resulting from the economic recession and defaulted under the Secured Credit Agreement by, among other things, failing to meet certain financial covenants and make certain payments when due thereunder.

13.     On October 16, 2013, the Secured Lender's predecessor filed a Complaint before the Supreme Court of the State of New York, County of Bronx, Index No. 381158/13, against the

---

[2] For further background and details with respect to the Pre-petition Secured Credit Agreement, interested parties are referred to the Cash Collateral Motion.

4

Debtors, Arlington Leon Eastmond, Jr., and others, asserting breach of the guaranties and seeking foreclosure and sale of its interests in the Collateral Properties (the "Foreclosure Action").

14.     After assignment of the Secured Credit Agreement to the Secured Lender, the Debtors and the Secured Lender entered into good faith negotiations in an attempt to reach a settlement of the Foreclosure Action.

15.     Pursuant to a recent third party appraisal conducted in connection with a potential refinancing facility, as of September 1, 2015, the Collateral Properties have a combined market value of $21,100,000, leaving the Secured Lender with a sizeable equity cushion of $9,126,653.25, even before accounting for the value of the Collateral constituting personal property.

16.     As part of their negotiations with the Secured Lender, the Debtors have entered into productive discussions with potential lenders to refinance their obligations under the Pre-petition Secured Credit Agreement. The Debtors have also retained real estate brokers, including Keen-Summit Capital Partners LLC, to market certain of the Collateral Properties that could be sold to repay their obligations to the Secured Lender. The Debtors have received multiple offers for the purchase of at least two of the Collateral Properties, including in the weeks immediately preceding the Petition Date.

17.     Notwithstanding the Debtors' continued negotiations with the Secured Lender, on October 29, 2015, the Secured Lender filed a Motion in the Foreclosure Action seeking, among other things, a final Judgment of Foreclosure and Sale of the Collateral Properties (the "Foreclosure Judgment Motion"), which was scheduled to be heard on December 2, 2015.

18.     The Debtors believe that filing the petitions was necessary to preserve the value of the Collateral and maintain the Debtors' business as a going concern. The Debtors believe that the chapter 11 process will allow the Debtors to maximize the value of their assets for all creditors, including the Secured Lender, and emerge as a profitable enterprise.

b.    <u>Pre-petition Litigation</u>

19.     In addition to the Foreclosure Action, in the years leading up to the Petition Date, the Defendants were involved in defending multiple litigations, requiring legal services of various litigation counsel, as specified on the schedules to the Debtors' petitions (collectively, the "<u>Pre-petition Litigation</u>"). The main categories of Pre-petition Litigation are:

a.   Claims filed by various plaintiffs for alleged successor liability on the part of the Debtors for injuries suffered as a result of exposure to asbestos in the Debtors' predecessors' products (the "<u>Asbestos Litigation</u>"). The Asbestos Litigation is pending before the Supreme Court of the State of New York, County of New York and the Superior Court of New Jersey, Middlesex County. These cases are in various stages of litigation and were being handled as of the Petition Date by litigation counsel Saul Ewing LP and Day Pitney LLP.

b.   Claims filed by Northstar Mechanical Corp., a creditor of the Debtors, alleging breach of contract, unjust enrichment and conversion, pending before the Supreme Court of the State of New York, Kings County (the "<u>Northstar Litigation</u>"). The Northstar Litigation was being handled as of the Petition Date by litigation counsel Day Pitney LLP. The parties were engaged in active settlement negotiations as of the Petition Date.

c.   Claims filed by V.C. Vitanza Sons, Inc., seeking foreclosure of a public improvement lien and alleging breach of contract against non-Debtors and potentially affecting mechanics liens filed by Easco (the "Vitanza Litigation"). Easco has asserted various cross-claims and a counterclaim in the Vitanza Litigation, which is pending before the Supreme Court for the State of New York, Bronx County, and is being handled by litigation counsel Day Pitney LLP as of the Petition Date.

d.   Claims filed by Faust, Goetz, Schenker & Blee, LLP, alleging, among other claims, breach of contract for non-payment of legal fees by Easco (the "Faust Litigation"). The Faust Litigation is pending before the Supreme Court of the State of New York, New York County, and is being handled by litigation counsel Day Pitney LLP as of the Petition Date.

e.   Claims filed by Tesco Resources Inc., alleging, among other claims, breach of contract for non-payment of goods and/or equipment delivered to Easco (the "Tesco Litigation"). The Tesco Litigation is pending before the Supreme Court of the State of New York, New York County, and the time to appear and respond to the complaint has not expired as of the Petition Date.

f.   Claims filed by two plaintiffs against AL Eastmond arising from two automobile accidents (the "Automobile Litigation"). The Automobile Litigation is pending before the Supreme Court of the State of New York, Kings County and is being handled by Litchfield Cavo, LLP and through the Debtors' automobile insurance as of the Petition Date.

### c.    The Debtors' Post-petition Goals

20.    During the pendency of these chapter 11 cases, the Debtors intend to increase liquidity by selling real estate for maximum value, repaying and/or refinancing their obligations under the Pre-petition Secured Credit Agreement, and resolving their pending litigation.

21.    The Debtors believe that the chapter 11 process affords a better opportunity to provide a greater return to their creditors than any alternative wind down or liquidation process.

22.    The Debtors believe that through chapter 11, they can restructure their business into a leaner, more efficient operation that can return to profitability.  The Debtors have operated successfully since 1925. President Arlington Leon Eastmond, Jr., together with his grandson Tyren Eastmond, the current Chief Operating Officer of the Debtors, intend to emerge from chapter 11 to continue their family legacy of providing high quality products and services for future generations.

## B.  The Debtors' Cases Were Not Originally Commenced Under Chapter 7 Or Chapter 13

23.    The Debtors' cases were voluntarily commenced under chapter 11 and were not originally commenced under chapter 7 or chapter 13 of the Bankruptcy Code. Accordingly, L.B.R. 1007-2(a)(2) is inapplicable.

## C.  Pre-petition Creditors' Committee

24.    In accordance with L.B.R. 1007-2(a)(3), to the best of the Debtors' knowledge, no pre-petition creditors' committee was formed prior to the Petition Date.

## D.  Twenty Largest General Unsecured Creditors

25.    In accordance with L.B.R. 1007-2(a)(4), a consolidated list setting forth the Debtors' twenty (20) largest unsecured creditors, excluding those persons who constitute "insiders" under Bankruptcy Code section 101(31), is annexed hereto as Exhibit A.  As required by L.B.R. 1007-2(a)(4), Exhibit A includes the creditors' names, addresses and telephone

numbers (for persons familiar with the account, if available), amount of each claim, and an indication of whether the claims are contingent, unliquidated, disputed, or partially secured.

### E.  Five Largest Secured Creditors

26.     In accordance with L.B.R. 1007-2(a)(5), a consolidated list setting forth the Debtors' five (5) largest secured creditors is annexed hereto as Exhibit B.  As required by L.B.R. 1007-2(a)(5), Exhibit B includes the creditors' names, addresses and telephone numbers (for persons familiar with the account, if available), amount of each claim, a description and an estimate of the value of the collateral securing the claim, and whether the claim or lien is disputed.

### F.  Summary of the Debtors' Assets and Liabilities

27.     As required by L.B.R. 1007-2(a)(6) a summary of the Debtors' assets and liabilities is attached as Exhibit C.

### G.  Publicly Held Stock

28.     As required by L.B.R. 1007-4(a)(7), no classes of shares of stock, debentures, or other securities of the Debtors are publicly held.  The Debtors' outstanding stock is owned 100% by Arlington Leon Eastmond, Jr.

### H.  Debtors' Property Held By Others

29.     The Debtors have no property in possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents or secured creditor, or agent for any such entity. Accordingly, L.B.R. 1007-2(a)(8) is inapplicable.

### I.  Debtors' Office Space

30.     As required by L.B.R. 1007-2(a)(9), AL Eastmond leases the Debtors' primary office space located at 1175 Leggett Avenue, Bronx, New York 10474. The Debtors also maintain limited accounting personnel and certain vehicles and equipment at 1200 Oak Point

Avenue (a/k/a 437 Casanova Street), Hunts Point, New York 10474, and additionally operate

from premises located at 1190 East 156th Street, Hunts Point, Bronx, New York, and 1173

Grinnell Place, Hunts Point, Bronx, New York, in each case owned by AL Eastmond.

### J.  Location of the Debtors' Assets and Books and Records

31.     Pursuant to L.B.R. 1007-2(a)(10), the Debtors' substantial assets and their books

and records are located at the leased premises located at 1175 Leggett Avenue, Bronx, New York

10474.  The Debtors do not have any assets held outside of the territorial limits of the United

States.

### K.  Pending or Threatened Actions

32.     Pursuant to L.B.R. 1007-2(a)(11), a list of pending or threatened actions against

the Debtors is attached hereto as Exhibit D.

### L.  Senior Management

33.     Pursuant to L.B.R. 1007-2(a)(12), the Debtors' senior management consists of:

    a)  Arlington Leon Eastmond, Jr., President and Chief Executive Officer

    b)  Tyren Eastmond, Chief Operating Officer

### M. Weekly Payroll

34.     Pursuant to L.B.R. 1007-2(b), the Debtors intend to continue the operation of their

business and the management of their properties as debtors and debtors in possession pursuant to

section 1107(a) and 1108 of the Bankruptcy Code.

35.     Pursuant to L.B.R. 1007-2(b)(1), for the thirty (30) day period following the

Petition Date, the Debtors intend to pay employees (exclusive of officers, directors, stockholders,

partners, and members) approximately $94,736 payable weekly, for a total of $416,842.01.

**N.  Payroll for Officers**

36.     Pursuant to L.B.R. 1007-2(b)(2)(A), the amount paid and proposed to be paid for the thirty (30) day period following the Petition Date for services rendered by officers, stockholders and directors is $67,582.83.

37.     The Debtors do not expect to retain a financial or business consultant. Therefore, L.B.R. 1007-2(b)(2)(C) is not applicable.

38.     In accordance with L.B.R. 1007-2(b)(3), a schedule of estimated cash receipts and disbursements, net cash gain or loss, and obligations and receivables expected to accrue but remain unpaid is annexed hereto as <u>Exhibit E</u>.

**II.      Additional Information In Support of First Day Motions**

39.     In order to continue operating effectively as debtors in possession, the Debtors require approval of certain transactions and dealings immediately.  Therefore, the Debtors are moving this Court for approval of certain "first day" matters in the instant case (collectively, the "<u>First Day Motions</u>").

40.     I have reviewed each of the First Day Motions and believe the facts set forth therein are true. The First Day Motions, described below, require immediate approval in order for the Debtors' business to continue uninterrupted during the immediate post-petition period.

**A.  Wage Motion**

41.     On the Petition Date, the Debtors will file the Debtors' Motion For an Order (I) Authorizing Payment of Pre-petition Wages, Employee Benefits, and Expense Reimbursement, (II) Authorizing and Directing Banks to Honor Checks with Respect Thereto, and (III) Approving Payment of Post-petition Wages, Benefits and Expense Reimbursement (the "<u>Wage Motion</u>").

42.     Because the Petition Date falls within a current payroll period, a certain portion of the Debtors' employees will be owed monies by the Debtors on account of pre-petition services rendered. As of the Petition Date, unpaid pre-petition wages, benefits and reimbursable expenses of employees, excluding payroll tax withholding, totaled $130,787.22.

43.     By the Wage Motion, the Debtors request authority, in the ordinary course and in the Debtors' discretion and exercise of their business judgment, to pay such amount, representing pre-petition fixed, liquidated and undisputed claims of employee compensation, benefits, reimbursable business expenses, less employee advances in whole or in part in accordance with the Debtors' business judgment, and related administrative costs in accordance with existing company policies.

44.     The Debtors believe that such payments are reasonable and necessary to the Debtors' reorganization effort. The Debtors believe that failure to make such payments to employees will damage the Debtors' relationship with their employees and, perhaps, irreparably impair the going concern value of their business.

45.     Authorizing payment of these amounts is consistent with the policies of the Bankruptcy Code and is permitted by sections 363 and 105 of the Bankruptcy Code.  Payment of the unpaid compensation and reimbursable expenses to the Debtors' employees will not significantly prejudice the other creditors in this proceeding because such unpaid amounts would give rise to priority claims under sections 507(a)(4) and (5) of the Bankruptcy Code. The Debtor is not seeking to pay any one employee in excess of $12,475 on account of unpaid compensation or reimbursable expenses.

## B.  Cash Collateral Motion

46.     On the Petition Date, the Debtors will file the Debtors' Motion, Pursuant to 11 U.S.C. §§ 105, 361 and 363, for Entry of Interim and Final Orders (I) Authorizing the Debtors to

Use Cash Collateral, (II) Granting Adequate Protection to Pre-petition Secured Lender, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief (the "Cash Collateral Motion").

47.     Certain of the Collateral may constitute cash collateral within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral").

48.     Without immediate access to such Cash Collateral, the Debtors will be unable to fund their day-to-day business operations during the pendency of these chapter 11 cases, which would adversely affect the value of the Debtors' business as a going-concern.

49.     By the Cash Collateral Motion, the Debtors respectfully request that the Court (i) enter the proposed Interim Order Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363(c) and Granting of Adequate Protection Pursuant to 11 U.S.C. § 361 (the "Interim Cash Collateral Order") authorizing the interim use of Cash Collateral on the terms and conditions set forth in the Interim Cash Collateral Order, and scheduling a Final Hearing on the Cash Collateral Motion; (ii) at the Final Hearing, enter an order to be filed by the Debtor with the Court (the "Final Cash Collateral Order" and, with the Interim Cash Collateral Order, the "Cash Collateral Orders") authorizing the continued use of Cash Collateral on the terms and conditions set forth in the Final Cash Collateral Order; and (iii) grant such other and further relief as is just and proper.

50.     The Interim Cash Collateral Order has been negotiated with the Secured Lender. The Secured Lender (or its predecessors) perfected liens and security interests in the Collateral by recording mortgages and filing Uniform Commercial Code financing statements with respect thereto, as applicable.

51.     The Cash Collateral Orders provide, among other things, that the Debtors shall be entitled to use the Cash Collateral in accordance with and subject to the terms and conditions set forth therein. Generally, Cash Collateral shall be used in accordance with and for the purposes described in the budget attached as an exhibit to the Cash Collateral Orders (the "Budget"),

prepared by the Debtors.  Key provisions of the Cash Collateral Orders are highlighted in the Cash Collateral Motion.

52.     The Debtors' access to Cash Collateral is essential to enable the Debtors to maintain the value of their assets and business through the pendency of these chapter 11 cases.  If the Debtors are unable to use Cash Collateral, the going-concern value of their business will be irreparably harmed.

53.     The Debtors' management has formulated the Budget for the use of the Cash Collateral that includes estimated expenses of the Debtors for the three month period following the Petition Date. The Debtors believe that the Budget includes all reasonable, necessary and foreseeable expenses to be incurred in the ordinary course in connection with the operation of their business, as well as chapter 11 administrative expenses, for the period set forth in the Budget. The Debtors also believe that the use of Cash Collateral in accordance with the Budget will provide the Debtors with sufficient liquidity to pay administrative expenses as they become due and payable during the period covered by the Budget.

54.     As indicated herein and in the Cash Collateral Motion, the interests of the Secured Lender are adequately protected in that the aggregate value of the Secured Lender's Collateral is substantially higher than the amount outstanding under the Pre-petition Secured Credit Agreement. Nevertheless, the Cash Collateral Orders provide for adequate protection to the Secured Lender as described below and in the Cash Collateral Motion.

55.     The secured creditors of AL Eastmond are also oversecured and therefore adequately protected in that the aggregate value of the Estate Collateral Properties alone, owned by AL Eastmond, is substantially higher than the amount of all outstanding obligations owed to secured creditors of AL Eastmond. The liens and security interests of the secured creditors of AL

14

Eastmond will remain in place to the same extent and with the same priority and validity that they had as of the Petition Date.

56.     Although the Secured Lender is oversecured and therefore adequately protected, the Cash Collateral Orders provide the Secured Lender with adequate protection, pursuant to Bankruptcy Code sections 361 and 363(e), to the extent of any diminution in the value of its Collateral resulting from (i) the use of the Cash Collateral pursuant to Bankruptcy Code § 363(e), (ii) the use, sale or lease of their Collateral (other than the Cash Collateral) pursuant to Bankruptcy Code § 363(c) or (iii) the imposition of the automatic stay pursuant to Bankruptcy Code § 362(a), in the form of replacement security interests in and liens on all of the Debtors' right, title and interest in and to all assets and properties of the Debtors, whether existing as of the Petition Date or acquired thereafter, including new receivables, inventory, and proceeds of the Estate Collateral Properties, but excluding causes of action under Chapter 5 of the Bankruptcy Code and the proceeds thereof, to the same extent and with the same priority and validity that they had as of the Petition Date.

57.     As additional adequate protection of the Secured Lender's interests in the Collateral, the Secured Lender shall be paid interest on the outstanding obligations under the Pre-petition Secured Credit Agreement as of the Petition Date at the prime rate of 3.25%, as reflected in the Budget.

58.     The Cash Collateral Orders provide the secured creditors holdings liens and security interests in the assets of the remaining Debtors, Easco and Eastmond & Sons (which do not own the Estate Collateral Properties) with adequate protection, pursuant to Bankruptcy Code sections 361 and 363(e), to the extent of any diminution in the value of their respective collateral resulting from (i) the use of the Cash Collateral pursuant to Bankruptcy Code § 363(e), (ii) the use, sale or lease of their respective collateral (other than the Cash Collateral) pursuant to

15

Bankruptcy Code § 363(c) or (iii) the imposition of the automatic stay pursuant to Bankruptcy

Code § 362(a), in the form of replacement security interests in and liens on all of the applicable

Debtor's right, title and interest in and to all assets and properties of such Debtor, whether

existing as of the Petition Date or acquired thereafter, including new receivables, inventory, and

proceeds of the secured creditor's respective collateral, but excluding causes of action under

Chapter 5 of the Bankruptcy Code and the proceeds thereof, to the same extent and with the

same priority and validity that such liens and security interests had as of the Petition Date.

59.     The use of the Cash Collateral is essential to the successful outcome of the

Debtors' Chapter 11 Case.  The Debtors must be able to provide comfort to their vendors,

employees, and others that they will be able to pay in the ordinary course for all post-petition

purposes.  Authorization of the use of Cash Collateral will provide the Debtors with the liquidity

necessary to operate their business and to pay the wages, salaries, rent, utilities and other

expenses associated therewith.  Without authorization of the utilization of the Cash Collateral,

the Debtors will likely be forced to terminate their operations and liquidate immediately.

### C.  Insurance Premium Financing Motion

60.     On the Petition Date, the Debtors will file the Debtors' Motion, Pursuant to 11

U.S.C. §§ 361 and 363 (b), for Entry of an Order Authorizing Debtors to Continue Honoring a

Prepetition Insurance Premium Finance Agreement (the "Insurance Premium Financing

Motion").

61.     The Debtors entered into an insurance premium financing agreement (the

"Insurance Finance Agreement") with First Insurance Funding Corp. ("First Funding") in order

to finance the payment of certain insurance premiums.  By the Premium Financing Motion, the

Debtors respectfully request that the Court (i) enter the proposed Order authorizing the Debtors,

in their discretion, to continue honoring certain obligations pursuant to the Insurance Finance

Agreement for the purpose of financing their insurance premiums under eight (8) insurance policies, and (ii) grant such other and further relief as is just and proper.

62.     Pursuant to the Insurance Finance Agreement, the Debtors are able to finance certain of their property, boiler and machinery, building, personal property, automobile, works' compensation, and umbrella and general liability insurance premiums. Without continued payments to First Funding, it is possible that the Debtors may lose access to critical insurance coverage required under applicable law or otherwise necessary to continue the operations of the business.

**D.  Conclusion**

63.     The Debtors reserve the right to amend or supplement any of the attached schedules in the event additional information is obtained by the Debtors.

64.     The Debtors believe that the protection of the Bankruptcy Code will enable them to maximize the value of their assets for the benefit of the estates and their creditors.

[Signature Follows]

Arlington Leon Eastmond, Jr., President

Sworn to before me this
1    th day of DEC. _____, 2015

_____
Notary Public, State of New York

DAVID VEGA
Notary Public, State Of New York
No. 01VE6022014
Qualified In Orange County
Commission Expires March 22, 2019

## EXHIBIT A

**A.L. Eastmond & Sons, Inc.**

**Twenty Largest General Unsecured Claims**

| Creditor | Amount | Classification |
|---|---|---|
| Day Pitney, LLP<br>P.O. Box 416234<br>Boston, MA 02241 | $464,603.38 | |
| First Insurance Funding<br>450 Skokie Blvd. Suite 1000<br>Northbrook, IL 60062 | $160,185.88 | |
| NYS Insurance Fund<br>199 Church Street<br>New York, NY 10007 | $59,431.20 | |
| NYC Waterboard<br>P.O. Box 11863<br>Newark, NJ 07101 | $41,827.73 | |
| Marks Paneth<br>88 Froehlich Farm Blvd.<br>Woodbury, NY 11797 | $35,835.00 | |
| Faust Goetz Schenker & Blee<br>2 Rector Street<br>New York, NY 10003 | $26,121.82 | |
| Keen Summit Capital Partners<br>10 East 53rd Street, 28th Floor<br>New York, NY 10022 | $25,717.00 | |
| Ford Credit<br>3620 Queen Palm Ave<br>Tampa, FL 33619 | $23,682,80 | |
| Ford Credit<br>3620 Queen Palm Drive<br>Tampa, FL 33619 | $17,795,65 | |
| Lambent Risk Management<br>One North LaSalle Street<br>Chicago IL 60602 | $14,786.09 | |

| | | |
|---|---|---|
| Ford Credit<br>3620 Queen Palm Drive<br>Tampa, FL 33619 | $13,914.00 | |
| NYC Department of Finance<br>P.O. Box 2307<br>New York, NY 10272 | $9,015.92 | |
| Expert Sprinkler Maintenance<br>68 East 131st Street, Suite 30<br>New York, NY 10037 | $8,500.00 | |
| Elite Investigations, Ltd.<br>538 W. 29th Street<br>New York, NY 10001 | $6,079.14 | |
| QEC Electrical Services Corp.<br>31-10 37th Avenue<br>Long Island City, NY 12165 | $6,000.00 | |
| Michael Development<br>802 Cypress Drive<br>Franklin Square, NY 11010 | $5,665.00 | |
| Andrews Technology HMS, Inc.<br>1213 Culbreth Drive<br>Wilmington, NC 28405 | $2,406.14 | |
| Brandt, Steinberg & Lewis, LLP<br>1430 Broadway<br>New York, NY 10018 | $2,325.00 | |
| Finance Commissioner NYC<br>P.O. Box 2307<br>New York, NY 10272 | $2,200.00 | |
| Fire Department of NY<br>9 Metrotech Center<br>Brooklyn, NY 11201 | $2,100.00 | |

## EXHIBIT A

**Eastmond & Sons Boiler Repair & Welding Service, Inc.**

**Twenty Largest General Unsecured Claims**

| Creditor | Amount | Classification |
|---|---|---|
| CCHP, LLC<br>c/o Case Real Estate Capital, LLC<br>340 West Passaic Street<br>Rochelle Park, NY 07662 | $11,973,346.75 | |
| Bronx Welding Supply<br>94 Marine Street<br>Farmingdale, NY 11735 | $8,730.74 | |
| Marine Boiler & Welding, Inc.<br>1428 Sheridan Expressway<br>Bronx, NY 10459 | $7,505.62 | |
| Divine Environmental, Inc.<br>358 Broadway<br>Newark, NY 07104 | $5,500.00 | |
| ACE Accurate Contracting<br>32 Old Farm Road<br>Carmel, NY 10512 | $4,550.00 | |
| Finance Commissioner, NYC<br>P.O. Box 2307<br>New York, NY 10272 | $2,250.00 | |
| LJM Engineering Group<br>439 Route 46 East<br>Rockaway, NJ 07866 | $2,097.00 | |
| Nutley Heating & Cooling<br>156 Chestnut Street<br>Nutley, NJ 07110 | $1,876.43 | |
| S.T. Johnson Company LLC<br>5160 Fulton Drive<br>Fairfield, CA 94534 | $1,031.62 | |
| Local 32BJ Seiu<br>P.O. Box 48237<br>Newark, NJ 07101-4837 | $795.00 | |

| | | |
|---|---|---|
| Automatic Heating Supply<br>P.O. Box 959<br>Bronx, NY 10455 | $534.40 | |
| ADA Tire Service, Inc.<br>1510 Castle Hill Avenue, #450<br>Bronx, NY 10462 | $512.80 | |
| Heating & Burner Supply<br>979 Walton Avenue<br>Bronx, NY 10451 | $467.07 | |
| Tire Supply Solutions<br>630 Hunts Point Avenue<br>Bronx, NY 10474 | $345.68 | |
| NYC Department of Buildings<br>280 Broadway<br>New York, NY 10007 | $286.50 | |
| NY Engineering Association<br>450 Skokie Boulevard, Suite 1000<br>Northbrook, IL 60602 | $250.00 | |

**EXHIBIT A**

**Easco Boiler Corp.**

**Twenty Largest General Unsecured Claims**

| Creditor | Amount | Classification |
|---|---|---|
| CCHP, LLC<br>c/o Case Real Estate Capital, LLC<br>340 West Passaic Street<br>Rochelle Park, NJ 07662 | $11,973,346.75 | |
| M.G.M. Steel Company, Inc.<br>P.O. Box 16082<br>Philadelphia, PA 15242 | $163,001.14 | |
| Bronx Welding Supply<br>310 Whittier Street<br>Bronx, NY 10474 | $30,742.74 | |
| The Hartford Steam Boiler<br>PO Box 73720<br>Chicago, IL 60673 | $29,724.48 | |
| OPS Sales Company<br>P.O. Box 189<br>Dewey, OK 74029 | $28,821.08 | |
| Tesco Resources Inc.<br>83 Union City Road<br>Prospect, CT 06712 | $25,094.00 | |
| Diversified Heat Transfer, Inc.<br>439 Main Road<br>Towaco, NJ 07082 | $19,060.00 | |
| A&M Industrial Supply<br>1414 Campbell Street<br>Rahway, NJ 07065 | $18,388.06 | |
| Conbraco Industries, Inc.<br>701 Matthews Mint Hill Road<br>Matthews, NC 28105 | $16,772.00 | |

| | | |
|---|---|---|
| Coil Craft, Inc.<br>94-12 129th Street<br>Richmond Hill, NY 11419 | $15,115.00 | |
| 1st Heating Solutions<br>619 Oakside Road<br>Yorktown Heights, NY 10598 | $11,237.50 | |
| Building New York 2016<br>P.O. Box 7247-7585<br>Philadelphia, PA 19170 | $11,025.00 | |
| NYC DOE<br>P.O. Box 11863<br>Newark, NJ 07101 | $7,960.00 | |
| Midland Steel Whse. Corp.<br>1120 Leggett Avenue<br>Bronx, NY 10474 | $7,856.54 | |
| ADA Tire Service, Inc.<br>1120 Leggett Avenue<br>Bronx, NY 10474 | $6,510.74 | |
| H.O. Terrace Co.<br>12950 W. Eight Mile Road<br>Oak Park, MI 48237 | $4,048.55 | |
| Spano Fastening Systems<br>84 S Front Street<br>Bergenfield, NJ 07621 | $3,694.95 | |
| A&C Heating Services<br>111 Clay Street<br>Brooklyn, NY 11222 | $2,795.37 | |
| Finance Commissioner of NYC<br>P.O. Box 2307<br>New York, NY 10272 | $2,600.00 | |
| J&J Heating Supply<br>10 Roselle Street<br>Mineola, NY 11501 | $2,544.14 | |

## EXHIBIT B

**A.L. Eastmond & Sons, Inc.**

**Five Largest Secured Claims**

| Creditor | Amount Secured | Classification |
|---|---|---|
| CCHP, LLC<br>Case Real Estate Capital, LLC<br>340 West Passaic Street<br>Rochelle Park, NJ 07662 | $11,973,346.75 | |
| Board of Trustees of the Service Employees<br>32BJ North Health Benefit Fund<br>140 Hugenot Street<br>New Rochelle, NY 10801 | $780,947.14 | |
| Services Employees of 32BJ North Health Benefit Fund<br>140 Hugenot Street<br>New Rochelle, NY 10801 | $527,626.34 | |
| Enviro Probe Inc.<br>500 Eighth Avenue, Suite 903<br>New York, NY 10018 | $34,827.58 | |
| The Estates of Crystal House Ltd.<br>12 Old Mamaroneck Road<br>White Plains, NY 10605 | $20,370.50 | |

## EXHIBIT B
**Eastmond & Sons Boiler Repair & Welding Service, Inc.**
**Five Largest Secured Claims**

| Creditor | Amount Secured | Classification |
|---|---|---|
| Internal Revenue Service<br>1 Clinton Avenue<br>Albany, NY 12207 | $101,510.63 | Contingent, Unliquidated, Disputed |
| New York State Department of Finance<br>Bankruptcy Section<br>P.O. Box 5300<br>Albany, NY 12205 | $80,094.90 | |
| Internal Revenue Service<br>1 Clinton Avenue<br>Albany, NY 12207 | $42,067.23 | |
| Commissioner of Labor<br>NYS Dept. of Labor, Bldg. 12<br>W.A. Harriman Campus<br>Albany, NY 12204 | $20,045.77 | |

**<u>EXHIBIT B</u>**
**Easco Boiler Corp.**

**Five Largest Secured Claims**

| <u>Creditor</u> | <u>Amount Secured</u> | <u>Classification</u> |
|---|---|---|
| NYS State Department of Taxation & Finance<br>Bankruptcy Section<br>P.O. Box 5300<br>Albany, NY 12205 | $255,172.77 | Contingent, Unliquidated, Disputed |
| NYS State Department of Taxation & Finance<br>Bankruptcy Section<br>P.O. Box 5300<br>Albany, NY 12205 | $248,878.46 | Contingent, Unliquidated, Disputed |
| Internal Revenue Service<br>1 Clinton Avenue<br>Albany, NY 12207 | $204,658.55 | Contingent, Unliquidated, Disputed |
| NYS State Department of Taxation & Finance<br>Bankruptcy Section<br>P.O. Box 5300<br>Albany, NY 12205 | $200,721.74 | Contingent, Unliquidated, Disputed |
| Internal Revenue Service<br>1 Clinton Avenue<br>Albany, NY 12207 | $182,385.28 | Contingent, Unliquidated, Disputed |

## EXHIBIT C

### A.L. Eastmond & Sons, Inc.

### Summary of Debtor's Assets and Liabilities

| Schedule Type | Assets | Liabilities |
|---|---|---|
| A – Real Property | $21,100,000.00 | |
| B – Personal Property | $6,835,124.64 | |
| C – Property Claimed as Exempt | | |
| D – Creditors Holding Secured Claims | | $13,361,725.24 |
| E – Creditors Holding Unsecured Priority Claims | | |
| F – Creditors Holding Unsecured Nonpriority Claims | | $935,161.91 |
| G – Executory Contracts and Unexpired Leases | | |
| H - Codebtors | | |
| I – Current Income of Individual Debtor(s) | | |
| J – Current Expenditures of Individual Debtor(s) | | |
| **Total Assets & Liabilities:** | **$27,935,124.64** | **$14,296,887.15** |

**EXHIBIT C**

**Eastmond & Sons Boiler Repair & Welding Service, Inc.**

**Summary of Debtor's Assets and Liabilities**

| Schedule Type | Assets | Liabilities |
|---|---|---|
| A – Real Property | | |
| B – Personal Property | 2,472,596.87 | |
| C – Property Claimed as Exempt | | |
| D – Creditors Holding Secured Claims | | $243,718.53 |
| E – Creditors Holding Unsecured Priority Claims | | |
| F – Creditors Holding Unsecured Nonpriority Claims | | $12,010,079.51 |
| G – Executory Contracts and Unexpired Leases | | |
| H - Codebtors | | |
| I – Current Income of Individual Debtor(s) | | |
| J – Current Expenditures of Individual Debtor(s) | | |
| **Total Assets & Liabilities:** | **$2,472,596.87** | **$12,253,798.04** |

## EXHIBIT C

**Easco Boiler Corp.**

**Summary of Debtor's Assets and Liabilities**

| Schedule Type | Assets | Liabilities |
|---|---|---|
| A – Real Property | | |
| B – Personal Property | $4,191,240.08 | |
| C – Property Claimed as Exempt | | |
| D – Creditors Holding Secured Claims | | $1,850,927.19 |
| E – Creditors Holding Unsecured Priority Claims | | |
| F – Creditors Holding Unsecured Nonpriority Claims | | $12,393,821.30 |
| G – Executory Contracts and Unexpired Leases | | |
| H - Codebtors | | |
| I – Current Income of Individual Debtor(s) | | |
| J – Current Expenditures of Individual Debtor(s) | | |
| **Total Assets & Liabilities:** | **$4,191,240.08** | **$14,244,748.49** |

## **EXHIBIT D**

### **A.L. Eastmond & Sons, Inc.**

### **Summary of Threatened or Pending Lawsuits**

(1) NYCTL: 2013-A Trust and Bank of New York Mellon vs. A.L. Eastmond & Sons, Stabilis Fund et. al. / Index No. 260771/2014

(2) Stabilis Fund II LLC vs. A. L. Eastmond & Sons, Inc., Easco Boiler, Eastmond & Sons Boiler Repair & Welding Service, Inc., Arlington L. Eastmond, Jr. a/k/a Arlington Leon Eastmond,et. al. / Index No. 381158/2013

(3) NYCTL: 2011-A Trust and Bank of New York Mellon vs. A.L. Eastmond & Sons, Inc., et. al. / Index No. 306944/2012

(4) V.C. Vitanza & Sons, Inc., vs. R.A.M.S Mechanical Inc., Fidelity and Deposit Company of Maryland, A.S.A.R. International Corp., Easco Boiler Corp., Solco Plumbing Supply, Inc., Structuretech New York, Inc. and New York City School Construction Authority / Index No. 2329/2015E

(5) Northstar Mechanical Corp, vs. A.L. Eastmond & Sons, Inc., Easco Boiler Corp. and Eastmond & Sons Boiler Repair & Welding Service, Inc. / Index No. 50174748/2013

(6) Jalowski vs. A.L. Eastmond & Sons, Inc. and Easco Boiler Corp., et al. / Index No. 190474-2012

(7) Herlihy vs. A.L. Eastmond & Sons, Inc. and Easco Boiler Corp., et al. / Index No. 190149/2011

(8) Jelich vs. A.L. Eastmond & Sons, Inc. and Easco Boiler Corp. et al. / Index No. 190181/2014

(9) Gill vs. A.L. Eastmond & Sons, Inc. and Easco Boiler Corp., et al. / Docket No. MID-L-2374-15AS

(10) Farinella vs. A.L. Eastmond & Sons, Inc. and Easco Boiler Corp., et al. / Docket No. MID-L-2310-15AS

(11) CCHP, LLC vs. A.L. Eastmond & Sons, Inc., Easco Boiler Corp., and Eastmond & Sons Boiler Repair & Welding Service, Inc., Arlington L. Eastmond Jr. a/k/a Arlington Leon Eastmond, et al. / Index No. 351158/2013

(12) Walker vs. Aesys, et al. / Docket No. MID-L-1390-13AS

(13) Raymond, as Personal Representative of the Estate of John F. Brfeen, deceased vs. A.L. Eastmond & Sons, Inc., et al. / Index No. 190243/2012

(14) Shabbir, Nahman vs. A.L. Eastmond & Sons, Inc. / Index No. 001769/2015

(15) Moreo vs. Gonzales / Docket No.: MRS-L-801-14

## EXHIBIT D

**Eastmond & Sons Boiler Repair & Welding Service, Inc.**

**Summary of Threatened or Pending Lawsuits**

(1) NYCTL: 2013-A Trust and Bank of NY Mellon vs. A.L. Eastmond & Sons, Inc, Stabilis Fund II LLC., et. al. / Index No. 260771-2014

(2) Stabilis Fund II, LLC vs. A.L. Eastmond & Sons, Inc., Easco Boiler, Eastmond & Sons Boiler Repair, Arlington L. Eastmond, Jr. a/k/a Arlington Leon Eastmond, Jr., et. al. / Index No.381158/13

(3) NYCTL 2011-A Trust and The Bank of New York Mellon vs. A.L. Eastmond & Sons Inc, et. al. / Index No. 306944-12

(4) V.C. Vitanza & Sons, Inc., vs. R.A.M.S Mechanical Inc., Fidelity and Deposit Company of Marlyand, A.S.A.R. International Corp., Easco Boiler Corp., Solco Plumbing Supply, Inc., Structuretech New York, Inc. and New York City School Construction Authority / Index No. 2329/2015E

(5) Northstar Mechanical Corp, vs. A.L. Eastmond & Sons, Inc., Easco Boiler Corp. and Eastmond & Sons Boiler Repair & Welding Service, Inc. / Index No. 50174748/2013

## EXHIBIT D

### Easco Boiler Corp.

### Summary of Threatened or Pending Lawsuits

(1) NYCTL: 2013-A Trust and Bank of New York Mellon vs. A.L. Eastmond & Sons, Inc., Stabilis Fund II LLC, et. al. / Index No. 260771-2014

(2) Stabilis Fund II LLC vs. A.L. Eastmond & Sons, Inc., Easco Boiler, Eastmond & Sons Boiler Repair & Welding Service, Inc., Arlington L. Eastmond, Jr. a/k/a Arlington Leon Eastmond, Jr., et. al. / Index No.381158/13

(3) NYCTL: 2011-A Trust and Bank of New York Mellon vs. A.L. Easmond & Sons, Inc., et. al. / Index No. 306944-12

(4) V.C. Vitanza & Sons, Inc., vs. R.A.M.S Mechanical Inc., Fidelity and Deposit Company of Marlyand, A.S.A.R. International Corp., Easco Boiler Corp., Solco Plumbing Supply, Inc., Structuretech New York, Inc. and New York City School Construction Authority / Index No. 2329/2015E

(5) Jalowski vs. A.L. Eastmond & Sons, Inc. and Easco Boiler Corp., et. al. / Index No. 190474/2012

(6) Herlihy vs. A.L. Eastmond & Sons, Inc. and Easco Boiler  Corp., et al. / Index No. 190149/2011

(7) Jelich vs. A.L. Eastmond & Sons, Inc. and Eastco Boiler Corp., et al. / Index No. 190181/2014

(8) Gill vs. A.L. Eastmond & Sons, Inc. and Easco Boiler Corp., et al. / Docket No. MID-L-2374-15AS

(9) Farinella v. A.L. Eastmond & Sons, Inc. and Easco Boiler Corp., et al. / Docket No. MID-L-2310-15AS

(10) CCHP, LLC vs. A.L. Eastmond & Sons, Inc., Easco Boiler Corp., and Eastmond & Sons Boiler Repair & Welding Service, Inc., Arlington L. Eastmond Jr. a/k/a Arlington Leon Eastmond, et al. / Index No. 351158/2013

(11) Northstar Mechanical Corp, vs. A.L. Eastmond & Sons, Inc., Easco Boiler Corp. and Eastmond & Sons Boiler Repair & Welding Service, Inc. / Index No. 50174748/2013

(12) Walker vs. Aesys, et al. / Docket No. MID-L-1390-13AS

(13) Raymond, as Personal Representative of the Estate of John F. Brfeen, deceased vs. A.L. Eastmond & Sons, Inc., et al. / Index No. 190243/2012

(14)   Matos vs. A.O. Smith, et al. / Index No. 190375/2014

(15)   Tesco Resources Inc. vs. Easco Boiler Corp. / Index No. 304837/15

(16)   Faust, Goetz, Schenker & Blee, LLP vs. Easco Boiler Corp. / Index No. 161259/2015

(17)   Easco Boiler Corp. vs. R.A.M.S. Mechanical, Inc. a/k/a RAMS Mechanical Inc. / Index
         No. 303968/2014

# EXHIBIT E

**Schedule of Cash Receipts and Disbursements**

| FOR THE MONTH OF: | December-15 | January-16 | February-16 |
|---|---|---|---|
| **PURCHASES** | | | |
| M.G.M STEEL COMPANY | $75,000.00 | $100,000.00 | $50,000.00 |
| KLOECKNER STEEL | 30,000.00 | 30,000.00 | 30,000.00 |
| THE HARTFORD STEAM BOILER | 30,000.00 | 30,000.00 | 30,000.00 |
| CONBRACO | 25,000.00 | 25,000.00 | 25,000.00 |
| DIVERSIFIED | 20,000.00 | 30,000.00 | 30,000.00 |
| COIL CRAFT | 20,000.00 | 30,000.00 | 30,000.00 |
| BRONX WELDING | 25,000.00 | 25,000.00 | 25,000.00 |
| ACE ACCURATE CONTRACTING | 10,000.00 | 10,000.00 | 10,000.00 |
| GREEN ARCH | 5,000.00 | 5,000.00 | 5,000.00 |
| POWER FLAME INC | 10,000.00 | 10,000.00 | 10,000.00 |
| BALANCE | 15,000.00 | 15,000.00 | 15,000.00 |
| **PAYROLL** | | | |
| DIRECT LABOR | 351,000.00 | 296,000.00 | 295,000.00 |
| INDIRECT LABOR | 224,000.00 | 182,000.00 | 180,000.00 |
| PAYROLL TAXES | 46,000.00 | 48,000.00 | 48,000.00 |
| EMPLOYEE MEDICAL INSURANCE | 20,000.00 | 20,000.00 | 20,000.00 |
| UNION BENEFITS | 53,000.00 | 53,000.00 | 53,000.00 |
| **INTEREST EXPENSE** | | | |
| CCHP INC | 35,300.00 | 35,300.00 | 35,300.00 |
| **INSURANCE** | | | |
| WORKERS' COMP & GEN'L LIABILITIES | 145,600.00 | 145,600.00 | 145,600.00 |
| OFFICER'S LIFE INSURANCE | 8,000.00 | 8,000.00 | 8,000.00 |
| **REAL ESTATE TAXES** | | | |
| NYC FINANCE | 22,000.00 | 22,000.00 | 22,000.00 |
| **UTILITIES** | | | |
| CON ED | 17,000.00 | 19,000.00 | 20,000.00 |
| **OPERATING EXPENSES** | | | |
| RENTAL EXPENSE | 5,700.00 | 5,700.00 | 5,700.00 |
| UNITED PARCEL SERVICE | 1,200.00 | 1,200.00 | 1,200.00 |
| WASTE DISPOSAL | 2,900.00 | 2,900.00 | 2,900.00 |
| BILT PETROLEUM | 9,200.00 | 9,200.00 | 9,200.00 |
| REPAIR & MAINTENANCE - EQUIPMENT | 9,400.00 | 9,400.00 | 9,400.00 |
| TRAVEL | 6,000.00 | 6,000.00 | 6,000.00 |
| TRUCK & AUTO EXPENSES | 28,000.00 | 28,000.00 | 28,000.00 |
| BOILER CERTIFICATION, TEST, FEES | 17,000.00 | 17,000.00 | 17,000.00 |
| **OFFICE EXPENSES** | | | |
| VERIZON | 5,200.00 | 5,200.00 | 5,200.00 |
| SIGNATURE BANK | 9,000.00 | 9,000.00 | 9,000.00 |
| OFFICE SUPPLIES | 800.00 | 800.00 | 800.00 |
| DUES & SUBSCRIPTIONS | 1,000.00 | 1,000.00 | 1,000.00 |
| **PROFESSIONAL FEES** | | | |
| DAY- PITNEY | 15,000.00 | 15,000.00 | 15,000.00 |
| MARKS PANETH | 20,000.00 | 20,000.00 | 20,000.00 |
| KLESTANDT WINTERS | 40,000.00 | 40,000.00 | 40,000.00 |
| COMMITTEE PROFESSIONALS | 10,000.00 | 10,000.00 | 10,000.00 |
| US TRUSTEE FEES | 0.00 | 6,500.00 | 0.00 |
| EPSILON ADVISORS | 4,000.00 | 4,000.00 | 4,000.00 |
| L.D. BLAND | 5,000.00 | 5,000.00 | 5,000.00 |
| **TOTAL EXPENSES** | $1,376,300.00 | $1,334,800.00 | $1,276,300.00 |
| **PROJECTED INCOME** | $1,250,000.00 | $1,470,000.00 | $1,300,000.00 |
| **NET INCOME (LOSS)** | ($126,300.00) | $135,200.00 | $23,700.00 |