**KLESTADT WINTERS JURELLER**
  **SOUTHARD & STEVENS, LLP**
Tracy L. Klestadt
Stephanie R. Sweeney
Maeghan J. McLoughlin
200 West 41st St., 17th Floor
New York, NY 10018
Telephone: (212) 972-3000
Facsimile: (212) 972-2245

*Proposed Counsel to the Debtors and Debtors in*
  *Possession*


**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| A. L. EASTMOND & SONS, INC., et al.,[1] | : | Case No. 15-13214 (SHL) |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | (Joint Administration Pending) |
| Debtors. | : |  |
-----------------------------------------------------------------x

**DEBTORS' MOTION, PURSUANT TO 11 U.S.C. §§ 105, 361, AND 363, FOR ENTRY OF
INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO USE CASH
COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO THE PREPETITION
SECURED LENDER, (III) SCHEDULING A FINAL HEARING, AND
(IV) GRANTING RELATED RELIEF**

A. L. Eastmond & Sons Inc. ("AL Eastmond"), Easco Boiler Corp. ("Easco Boiler"), and

Eastmond & Sons Boiler Repair & Welding Service, Inc. ("Eastmond & Sons") (each a "Debtor"

and together the "Debtors"), the Debtors in the above-captioned case, by their proposed counsel

Klestadt Winters Jureller Southard & Stevens, LLP, hereby file this motion (the "Motion")

seeking entry of an interim order substantially in the form attached hereto as Exhibit A (the

"Interim Cash Collateral Order"), and a final order (the "Final Cash Collateral Order" and,

---

[1]The Debtors in these cases, along with the last four digits of their federal tax identification numbers are (i) A. L. Eastmond & Sons, Inc. (6359); (ii) Easco Boiler Corp. (2409); and (iii) Eastmond & Sons Boiler Repair & Welding Service, Inc. (3471).

together with the Interim Cash Collateral Order, the "Cash Collateral Orders") (a) authorizing the Debtors to use Cash Collateral (as defined herein) pursuant to sections 361 and 363 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"); (b) approving the form of adequate protection provided to the Debtors' prepetition secured lender pursuant to Bankruptcy Code sections 361 and 363; (c) scheduling a final hearing ("Final Hearing") on the Motion; and (d) granting related relief.  In support of the Motion, the Debtors rely upon and incorporate by reference the *Affidavit of Arlington Leon Eastmond, Jr., President of the Debtors, Pursuant to Local Bankruptcy Rule 1007-2* filed concurrently herewith (the "Eastmond Affidavit").  In further support of this Motion, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1.    The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.    The statutory bases for the relief sought herein are sections 105, 361, and 363 of the Bankruptcy Code, Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

## INTRODUCTION

3.    On the date hereof (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York.

4.     The Debtors continue in possession of their properties and continue to operate and manage their business as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

5.     No trustee, examiner or official committee of unsecured creditors has been appointed in these chapter 11 cases.  Concurrently with the filing of this Motion, the Debtors filed a motion requesting joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).

## BACKGROUND

6.     The factual background relating to the Debtors' commencement of these chapter 11 cases and the facts and circumstances supporting the relief requested herein are set forth in greater detail in the Eastmond Affidavit, filed contemporaneously herewith and incorporated herein by reference.

### a.   The Pre-petition Secured Credit Agreement Loan Documents

#### i.  Note 1 and Note 2

7.     Pre-petition, the Debtors entered into that certain Loan and Security Agreement (together with the Notes (as defined below) and as amended, supplemented and otherwise modified from time to time, the "Prepetition Secured Credit Agreement"; the liens thereunder, the "CCHP Liens"), dated December 21, 2007, by and between Sovereign Bank (the "Original Lender")[2] and the Debtors.

8.     The obligations under the Prepetition Secured Credit Agreement are guaranteed by each of the Debtors and, to a limited extent, by the Debtors' President, Arlington Leon

---

[2] As described more fully herein, the Original Lender assigned the Loan Documents (as defined below) to Stabilis Fund II, LLC, who later assigned the Loan Documents to the current lender, CCHP LLC.

Eastmond, Jr., individually, under certain Guaranties, dated as of December 21, 2007 (collectively, the "Guaranties").

9.      The Prepetition Secured Credit Agreement was originally comprised of a Term Note in the principal amount of $6,000,000 ("Note 1") and a Revolving Note in the principal amount of $2,000,000 ("Note 2").

10.     Each of Note 1 and Note 2 is secured by a separate Mortgage (together, the "Initial Mortgages"), dated as of December 21, 2007, executed by AL Eastmond in favor of the Original Lender, covering three parcels of real property owned by AL Eastmond: 1200 Oak Point Avenue, Hunts Point, Bronx, New York (a/k/a 437 Casanova St.) ("Oak Point"); 1173-1175 Leggett Avenue, Hunts Point, Bronx, New York ("Leggett"); and 1190 East 156th Street, Hunts Point, Bronx, New York ("1190 East 156th"). The Initial Mortgages were duly recorded on January 25, 2008 in the Office of the City Register of the City of New York, Bronx County.

11.     Each of Note 1 and Note 2 is further secured by a separate Collateral Assignment of Leases and Rents (together, the "Initial Collateral Assignments"), dated December 21, 2007, executed by AL Eastmond in favor of the Original Lender, and recorded on January 25, 2008 in the Office of the City Register of the City of New York, Bronx County.

### ii.  Note 3

12.     In or around October 2008, the Debtors required additional financing and entered into an additional Term Note in favor of the Original Lender, dated October 23, 2008, in the principal amount of $1,250,000 ("Note 3" and, together with Note 1 and Note 2, the "Notes").

13.     Note 3 is secured by that certain Mortgage (the "Note 3 Mortgage" and, together with the Initial Mortgages, the "Mortgages"), dated October 23, 2008, executed by AL Eastmond in favor of the Original Lender, covering Oak Point, Leggett, 1190 East 156th, and a fourth parcel

of real property owned by AL Eastmond: 1173 Grinnell Place, Hunts Point, Bronx, New York ("Grinnell" and, together with Oak Point, Leggett and 1190 East 156th, the "Estate Collateral Properties"). The Note 3 Mortgage was duly recorded on November 13, 2008 in the Office of the City Register of New York, Bronx County.

14.     Note 3 is further secured by a Collateral Assignment of Leases and Rents (the "Note 3 Collateral Assignment" and, together with the Initial Collateral Assignments, the "Collateral Assignments"), dated October 23, 2008, executed by AL Eastmond in favor of the Original Lender, and duly recorded on November 13, 2008 in the Office of the City Register of the City of New York, Bronx County.

### iii.   UCC Financing Statement

15.     On October 27, 2008, Original Lender filed a Uniform Commercial Code ("UCC") financing statement with the Office of the City Register of the City of New York, Bronx County, granting Original Lender a security interest in all of the Debtors' personal property, including machinery, equipment and goods located at Grinnell (the "Grinnell Financing Statement").[3]

### iv.   Mortgage Spreader Agreements

16.     At the time the Note 3 Mortgage was recorded, the Original Lender expanded its collateral securing Note 1 and Note 2 to also include the Grinnell property. AL Eastmond executed in favor of the Original Lender certain Mortgage Spreader Agreements (the "Initial Mortgage Spreader Agreements") for the Initial Mortgages, spreading the Initial Mortgages over all four Estate Collateral Properties. The Initial Mortgage Spreader Agreements were duly recorded on November 13, 2008 in the Office of the City Register of the City of New York, Bronx County.

---

[3] The Grinnell Financing Statement bears CRFN 20080004420197, with Document ID 2008102700095001.

17.    After the occurrence of certain events of default under the Prepetition Secured Credit Agreement, on September 22, 2010, the Original Lender further expanded all of the Mortgages securing the Prepetition Secured Credit Agreement to include a fifth property: 1225 Randall Avenue, Hunts Point, Bronx, New York ("Randall" and, together with the Estate Collateral Properties, the "Collateral Properties"). AL Eastmond executed in favor of the Original Lender a Mortgage Spreader Agreement (the "Randall Mortgage Spreader Agreement" and, together with the Initial Mortgage Spreader Agreements, the "Mortgage Spreader Agreements"), spreading the existing Mortgages over all five Collateral Properties. The Randall Mortgage Spreader Agreement was recorded on November 4, 2010 in the Office of the City Register of the City of New York, Bronx County.

18.    Notably, Randall is not property of the Debtors' estates. It is owned individually by the individual guarantor and President of the Debtors, Arlington Leon Eastmond, Jr.

19.    Accordingly, the Prepetition Secured Credit Agreement is secured by all five Collateral Properties, the Grinnell Financing Statement, and the UCC Financing Statements (defined below). The Prepetition Secured Credit Agreement (including the Notes), the Guaranties, the Collateral Assignments, the Mortgages and the Mortgage Spreader Agreements, the Grinnell Financing Statement, the UCC Financing Statements, and all other documents executed in connection therewith, are collectively referred to herein as the "Loan Documents".

### v.    Assignment of the Loan Documents to Secured Lender CCHP, LLC

20.    On or about September 17, 2012, the Original Lender assigned the Loan Documents to Stabilis Fund II, LLC ("Stabilis").

21.     On October 9, 2013, Original Lender filed a UCC3 Assignment assigning the Grinnell Financing Statement to Stabilis and on the same date Stabilis filed a UCC3 continuation statement continuing the original Grinnell Financing Statement.[4]

22.     Also on October 9, 2013, Stabilis filed certain UCC financing statements (together with the Grinnell Financing Statement, the "UCC Financing Statements")[5] with the Office of the City Register of the City of New York, Bronx County, granting Stabilis a security interest in all of the Debtors' personal property, including machinery, equipment and goods located at each of the Estate Collateral Properties (collectively, the "Personal Property Collateral" and, together with the Collateral Properties and the Collateral Assignments, the "Secured Lender's Collateral").

23.     On or about September 24, 2014, Stabilis assigned the Loan Documents to CCHP, LLC (as assignee of the Original Lender and Stabilis, the "Secured Lender").

24.     On or about December 5, 2014, Stabilis filed certain amendments to the UCC Financing Statements, assigning Stabilis's security interests in the Personal Property Collateral to the Secured Lender.[6]

25.     As of the Petition Date, the aggregate amount outstanding under the Prepetition Secured Credit Agreement, together with accrued and unpaid interest, is $11,973,346.75.

---

[4] The UCC3 Assignment bears CRFN 2013000419725 (Document ID: 2013100400268001) and the UCC Continuation bears CRFN 2013000419726 (Document ID: 2013100400268002).

[5] UCC-1 Financing Statements filed at: CRFN 2013000419654 (Document ID: 20131004001800001); CFRN2013000419655 (Document ID: 20131004001800002); CRFN2013000419656 (Document ID: 2013100400180003); CRFN 2013000419657 (Document ID: 20131004001800004).

[6] UCC-3 Financing Statement Amendments filed at: CRFN 20140004002427 (Document ID: 2014120300733001) (assigning Stabilis's security interest in UCC Financing Statement bearing CRFN 20080004200197); CRFN 2014000402428 (Document ID: 2014120300733002) (assigning Stabilis's security interest in UCC Financing Statement bearing CRFN 2013000419654); CRFN 20140004022429 (Document ID: 2014120300733003) (assigning Stabilis's security interest in UCC Financing Statement bearing CRFN 2013000419655); CRFN 2014000402430 (Document ID: 2014120300733004) (assigning Stabilis's security interest in UCC Financing Statement bearing CRFN 2013000419656); CRFN 2014000402431(Document ID: 2014120300733005)) (assigning Stabilis's security interest in UCC Financing Statement bearing CRFN 2013000419657).

### b.  Additional Secured Debt

26.      As indicated on the Debtors' schedules, as of the Petition Date, the Debtors have certain secured indebtedness outstanding in addition to the obligations outstanding under the Loan Documents in connection with judgments entered against each of the Debtors. The following is only a summary of such additional secured indebtedness and shall not be deemed an admission by the Debtors of liability as to any debt or the validity, extent or priority of any judgment, lien or security interest.

### i.  A. L. Eastmond & Sons, Inc.

27.      On or about May 20, 1996, The Estates of Crystal House Ltd. docketed a transcript of judgment in the amount of $20,370.50 in the Bronx County Clerks' Office (the "Crystal House Lien").

28.      On or about December 1, 1997, the City of New York docketed a transcript of judgment in the amounts of $200.00 in the Bronx County Clerks' Office (the "First City of NY Lien").

29.      On or about January 14, 1998, Enviro Probe Inc. docketed a judgment in the amount of $13,343.20 in the Bronx County Clerks' Officer (the "Enviro Probe Lien").

30.      On or about November 17, 2009, the City of New York docketed a transcript of judgment in the amounts of $430.00 in the Bronx County Clerks' Office (the "Second City of NY Lien" and with the First City of NY Lien, the "City of NY Liens").

31.      On or about November 17, 2010, the City of New York Law Department docketed a transcript of judgment in the amount of $3,630 in the Bronx County Clerks' Office bearing Index No. 2000SX136939 (the "AL Eastmond Law Department Lien").

32.     On or about July 20, 2011, the Board of Trustees of the Service Employees 32BJ North Health Benefit Fund and the Service Employees 32BJ North Health Pension Fund and the Service Employees 12BJ North Legal Services Fund docketed a judgment in the amount of $780,947.14 in the Bronx County Clerks' Office bearing Index No. 306371-2011 (the "AL Eastmond Board of Trustees Lien").

33.     On or about October 9, 2012, the Service Employees 32BJ North Health Benefit Fund (the Health Fund), Service Employees 32BJ North Pension Fund (Pension Fund) and Service Employees 32BJ North Legal Services Fund (Legal Fund) docketed a judgment in the amount of $527,626.34 in the Bronx County Clerks' Office bearing Index No. 21652-2011 (the "AL Eastmond Service Employees Lien").

34.     On or about October 22, 2015, the Commissioner of Labor, State of New York, docketed a lien in the amount of $14,836.21 in the Bronx County Clerks' Office bearing Index No. 34-71121 (the "AL Eastmond Commissioner of Labor Lien").

35.     The secured creditors holding the Crystal House Lien, Enviro Probe Lien, City of NY liens, Prepetition AL Eastmond Law Department Lien, AL Eastmond Board of Trustees Lien, AL Eastmond Service Employees Lien, and AL Eastmond Commission of Labor Lien are collectively referred to herein as the "AL Eastmond Secured Creditors."

### ii. Easco Boiler Corp.

36.     On or about June 13, 2002, the Criminal Court of the City of NY (the "Criminal Court") filed a transcript of judgment in the amount of $250 bearing Index No. 2002SX040122.

37.     On or about August 14, 2012, the Internal Revenue Service ("IRS") filed a federal tax lien in the amount of $12,602.67 in Bronx County bearing CRFN 20120003320781.

38.      On or about March 5, 2013, the New York State Department of Tax and Finance (the "NYS Dept of Tax") docketed a New York State tax warrant in the amount of $204,658.55 in the Bronx County Clerks' Office bearing Index No. E0100887200028.

39.      On or about April 2, 2013, the NYS Dept of Tax docketed a New York State tax warrant in the amount of $200,721.74 in the Bronx County Clerks' Office bearing Index No. E0100887200029.

40.      On or about April 30, 2013, the NYS Dept of Tax docketed a New York State tax warrant in the amount of $45,501.96 in Bronx County bearing Index No. E0100887200030.

41.      On or about May 6, 2013, the IRS filed a federal tax lien in the amount of $120,656.07 in Bronx County bearing CRFN 2013000181429.

42.      On or about May 15, 2013, the Criminal Court docketed a transcript of judgment in the amount of $5,000 bearing Index No. 2012SX098077.

43.      On or about May 15, 2013, the Criminal Court docketed a transcript of judgment in the amount of $5,000 bearing Index No. 2012SX098077.

44.      On or about May 15, 2013, the Criminal Court docketed a transcript of judgment in the amount of $5,000 bearing Index No. 2012SX098077.

45.      On or about June 11, 2013, the IRS filed a federal tax lien in the amount of $4,359.60 in Bronx County bearing CRFN 2013000229373.

46.      On or about September 25, 2013, the Criminal Court docketed a transcript of judgment in the amount of $1,000 bearing Index No. 2013SX039685.

47.      On or about September 25, 2013, the Criminal Court docketed a transcript of judgment in the amount of $1,000 bearing Index No. 2013SX039685.

48.     On or about September 25, 2013, the Criminal Court docketed a transcript of judgment in the amount of $1,000 bearing Index No. 2013SX039685.

49.     On or about September 25, 2013, the Criminal Court docketed a transcript of judgment in the amount of $1,000 bearing Index No. 2013SX039685.

50.     On or about March 4, 2015, the Criminal Court docketed a transcript of judgment in the amount of $1,000 bearing Index No. 2015SX0003550.

51.     On or about May 13, 2015, the Criminal Court docketed a transcript of judgment in the amount of $5,000 bearing Index No. 2015SX011133 (the Criminal Court liens filed against Easco are the "Easco Criminal Court Liens").

52.     On or about June 23, 2015, the NYS Dept of Tax docketed a New York State tax warrant in the amount of $151,373.92 in Bronx County bearing Index No. E0100887200032 (the NYS Dept of Tax liens filed against Easco are the "Easco NYS Dept of Tax Liens").

53.     On or about September 8, 2015, the IRS filed a federal tax lien in the amount of $181,184.07 in Bronx County bearing CRFN 2015000313703 (the IRS liens filed against Easco are the "Easco IRS Liens").

54.     The secured creditors holding the Easco IRS Liens, the Easco NYS Dept of Tax Liens, and the Easco Criminal Court Liens are collectively referred to herein as the "Easco Secured Creditors."

### c.    Eastmond & Sons Boiler Repair & Welding Service, Inc.

55.     On or about November 12, 2014, the NYS Dept of Tax and Fin. filed a New York State tax warrant in the amount of $80,094.90 in the Bronx County Clerks' Office (the "Eastmond & Sons NYS Dept of Tax & Fin Lien").

56.     On or about June 25, 2015, the Internal Revenue Service filed a federal tax lien in the amount of $101,510.63 in Bronx County bearing CRFN 2015000217314 (the "First Eastmond & Sons IRS Lien").

57.     On or about September 23, 2015, the Internal Revenue Service filed a federal tax lien in the amount of $42,067.23 in Bronx County bearing CRFN 2015000339599 (the "Second Eastmond & Sons  IRS Lien" and, together with the First Eastmond & Sons Prepetition IRS Lien, the "Eastmond & Sons IRS Liens").

58.     On or about October 22, 2015, the Commissioner of Labor of the State of New York docketed a lien in the amount of $20,045.77 in the Bronx County Clerks' Office (the "Eastmond & Sons Commissioner of Labor Lien").

59.     The secured creditors holding the Eastmond & Sons Prepetition NYS Dept of Tax & Fin. Lien, the Eastmond & Sons Prepetition IRS Liens, and the Eastmond & Sons Commissioner of Labor Lien are collectively referred to herein as the "Eastmond & Sons Secured Creditors."

### d.  Cash Collateral

60.     The Debtors believe that all cash, accounts receivable and other proceeds of the Secured Lender's Collateral in the Debtors' possession or control as of the Petition Date, and all cash, accounts receivable and other proceeds of the Secured Lender's Collateral coming into the Debtors' possession or control after the Petition Date, constitute the Secured Lender's Cash Collateral within the meaning of section 363(a) of the Bankruptcy Code.

61.      The Debtors further believe that all cash, accounts receivable, inventory and other assets of AL Eastmond, including any proceeds of the Estate Collateral Properties, as of the

Petition Date (but not following the Petition Date) constitute the AL Eastmond Secured Creditors' Cash Collateral within the meaning of Section 363(a) of the Bankruptcy Code.

62.     The Debtors further believe that all cash, accounts receivable, inventory and other assets of Easco and Eastmond & Sons as of the Petition Date (but not following the Petition Date) constitute the Easco Secured Creditors' and the Eastmond & Sons Secured Creditors' Cash Collateral, respectively, within the meaning of Section 363(a) of the Bankruptcy Code.

63.     The Debtors believe that the Secured Lender is oversecured.  Pursuant to a recent third party appraisal conducted in connection with a potential refinancing facility, as of September 1, 2015, the Collateral Properties have a combined market value of $21,100,000. Even before accounting for the Personal Property Collateral, the value of the Collateral Properties exceeds the amount of obligations outstanding under the Pre-petition Secured Credit Agreement by approximately $9,126.653.25.

64.     The Debtors believe that the AL Eastmond Secured Creditors are also oversecured. The aggregate value of the Estate Collateral Properties alone, owned by AL Eastmond, is substantially higher than the amount of all outstanding obligations owed to the AL Eastmond Secured Creditors.

65.     The Interim Cash Collateral Order proposes to provide adequate protection to the Secured Lender, the Easco Secured Creditors and the Eastmond & Sons Secured Creditors upon the terms set forth therein and as further described below.

## **RELIEF REQUESTED**

66.     By this Motion, the Debtors request entry of the Interim Cash Collateral Order, substantially in the form attached hereto as **Exhibit A**, and the Final Cash Collateral Order to be submitted to the Court for approval prior to the Final Hearing, (a) authorizing the Debtors to use

13

Cash Collateral on an interim basis; (b) granting certain adequate protection to the Secured

Lender, the Easco Secured Creditors and the Eastmond & Sons Secured Creditors in connection

with the use of Cash Collateral to the extent of any diminution in the value of the respective

interests of such creditors in the Cash Collateral; (c) approving the form and manner of notice

and scheduling the Final Hearing; and (d) granting related relief.

## CONCISE STATEMENT PURSUANT TO BANKRUPTCY RULE 4001 AND LOCAL RULE 4001-2

| | |
|---|---|
| Name of Parties with interest in Cash Collateral | (1) CCHP, LLC, (2) The Estates of Crystal House Ltd., (3) City of New York, (4) Enviro Probe Inc., (5) Board of Trustees of the Service Employees 32BJ North Health Benefit Fund and the Service Employees 32BJ North Health Pension Fund and the Service Employees 12BJ North Legal Services Fund, (6) Service Employees 32BJ North Health Benefit Fund (the Health Fund), Service Employees 32BJ North Pension Fund (Pension Fund) and Service Employees 32BJ North Legal Services Fund (Legal Fund), (7) Commissioner of Labor, State of New York, (8) Criminal Court of the City of New York, (9) Internal Revenue Service, (10) New York State Department of Tax & Finance, (11) City of New York Law Department |
| Purposes for use of cash collateral | The Debtors intend to use Cash Collateral for general operating expenses and costs incurred in the ordinary course of business. |
| Material terms and duration of cash collateral | • The Debtors propose to use Cash Collateral for an interim period of 15 days and a final period of 90 days following the Petition Date, which may be extended upon further approval of the Court.<br>• The Secured Lender is fully secured by the value of the Collateral Properties.<br>• The AL Eastmond Secured Creditors are fully secured by the value of the Estate Collateral Properties.<br>• The CCHP Liens and the liens of the AL Eastmond Secured Creditors will remain in place as against the assets of AL Eastmond, including the Estate Collateral Properties, to the same extent and with the same priority and validity that they had as of the Petition Date. |
| Adequate protection provided to parties with interest in cash collateral | • Although the Secured Lender is fully secured, the Secured Lender will receive replacement liens on the Debtors' post-petition receivables, inventory and proceeds of the Estate Collateral Properties, to the same extent and with the same priority and validity that they had as of the Petition Date.<br>• The Debtors will also provide the Secured Lender with |

14

|  | monthly interest payments as set forth in the Budget at the Wall Street Journal prime rate.<br>• The Easco Secured Creditors and the Eastmond & Sons Secured Creditors will receive replacement liens on the applicable Debtor's post-petition receivables, inventory and other assets, to the same extent and with the same priority and validity that they had as of the Petition Date. |
| --- | --- |
| Amount of Cash Collateral to be Used | As set forth in the Budget. |
| Effect of Adequate Protection on Existing Liens | None. |
| Carve-Outs | None. |
| Limitation on Court's Power or Discretion. | None. |
| Joint Liability | The Debtors are seeking to have these cases jointly administered. There are no terms that govern the joint liability of Debtors. |
| Funding of Non-debtor Affiliates | There are no provisions for the funding of non-debtor affiliates with Cash Collateral. |

## THE CASH COLLATERAL

67.    The Interim Cash Collateral Order provides, among other things, that the Debtors shall be entitled to use the Cash Collateral in accordance with and subject to the terms and conditions set forth therein.  Generally, the proposed use of Cash Collateral shall be consistent with and for the purposes described in the budget attached to the Interim Cash Collateral Order as **Exhibit 1** (the "Budget").

68.    The AL Eastmond Secured Creditors are oversecured and therefore adequately protected in that the aggregate value of the Estate Collateral Properties alone, owned by AL Eastmond, is substantially higher than the amount of all outstanding obligations owed to the AL Eastmond Secured Creditors. The liens of the AL Eastmond Secured Creditors will remain in place (subject to Court approval) to the same extent and with the same priority and validity that they had as of the Petition Date.

69.     Although the Secured Lender is also oversecured and therefore adequately protected, the Interim Cash Collateral Order provides the Secured Lender with adequate protection to the extent of any diminution in the value of the Secured Lender's Collateral resulting from (i) the use of the Secured Lender's Cash Collateral pursuant to Bankruptcy Code § 363(e), (ii) the use, sale or lease of the Secured Lender's Collateral (other than the Cash Collateral) pursuant to Bankruptcy Code § 363(c) and (iii) the imposition of the automatic stay pursuant to Bankruptcy Code § 362(a), valid and perfected replacement security interests in and liens on, all of the Debtors' right, title and interest in and to all assets and properties of the Debtors, whether existing as of the Petition Date or acquired thereafter, including new receivables, inventory, and proceeds of the Estate Collateral Properties, but excluding causes of action under Chapter 5 of the Bankruptcy Code and the proceeds thereof, to the same extent and with the same priority and validity that they had as of the Petition Date.

70.     As additional adequate protection, the Secured Lender will also receive monthly payments at the Wall Street Journal prime rate on account of the CCHP Liens in accordance with the Budget.

71.     Due to the fact that Easco and Eastmond & Sons do not own the Estate Collateral Properties, the Interim Cash Collateral Order provides the Easco Secured Creditors and the Eastmond & Sons Secured Creditors with adequate protection, to the extent of any diminution in the value of such Creditors' respective collateral, resulting from (i) the use of such creditors' respective Cash Collateral pursuant to Bankruptcy Code § 363(e), (ii) the use, sale or lease of such creditors' respective collateral (other than the Cash Collateral) pursuant to Bankruptcy Code § 363(c) and (iii) the imposition of the automatic stay pursuant to Bankruptcy Code § 362(a), valid and perfected replacement security interests in and liens on, all of the applicable

Debtor's right, title and interest in and to all assets and properties of such Debtor, whether existing as of the Petition Date or acquired thereafter, including new receivables, inventory, and proceeds of the Easco Secured Creditors' and Eastmond & Sons Secured Creditors' respective collateral, but excluding causes of action under Chapter 5 of the Bankruptcy Code and the proceeds thereof, to the same extent and with the same priority and validity that such liens and security interests had as of the Petition Date.

72.     The Debtors are not seeking any carve-out from the Cash Collateral for professional fees or to reserve funds in the event of conversion or dismissal of these cases.

73.     In addition, the Debtors are not acknowledging or stipulating to the validity or perfection of any security interest or lien.

## BASIS FOR RELIEF

74.     Pursuant to court order, a debtor in possession may be authorized to use cash collateral in the ordinary course of its business operations under Bankruptcy Code § 363(c).  The provision provides, in pertinent part, that the trustee may not use, sell, or lease cash collateral . . . unless–

> (A) each entity that has an interest in such cash collateral consents; or
>
> (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section [363].

11 U.S.C. § 363(c)(2).

75.     Further, section 363(e) provides that "on request of an entity that has an interest in property . . . proposed to be used, sold or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest."  11 U.S.C. § 363(e).

76.     Permissible forms of adequate protection include periodic cash payments, additional liens, replacement liens, and other forms of relief. 11 U.S.C. § 361.

77.     Courts repeatedly have recognized that use of cash collateral is appropriate where necessary to preserve a debtor's ability to reorganize and thus maximize the value of an estate for all interested parties. See In re Realty Southwest Assoc., 140 B.R. 360, 366 (Bankr. S.D.N.Y. 1992); H.R. Rep. No. 595, 95th Cong., 1st Sess. 344 (1977); 3 Collier on Bankruptcy 363.03 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2006); see also In re Dynaco, 162 B.R. 389, 396 (Bankr. D. N.H. 1993); In re Stein, 19 B.R. 458 (Bankr. E.D. Pa. 1982).  Bankruptcy Rule 4001(b) governs authorization for utilizing cash collateral and provides that the court may permit the debtor-in-possession to use cash collateral prior to a final hearing to the extent necessary to avoid immediate and irreparable harm.  After a final hearing held on at least fifteen days' notice, the court may grant the authority to use cash collateral on a permanent basis and other permanent relief requested herein.

78.     Adequate protection is provided to protect a secured creditor from any diminution in the value of its interest in the particular collateral during the period of use.  See In re 354 E. 66th St. Realty Corp., 177 B.R. 776, 782 (Bankr. E.D.N.Y. 1995) ("The purpose or intent of granting adequate protection payments are to maintain the status quo for that creditor and to protect the creditor from diminution or loss of the value of its collateral during the ongoing Chapter 11 case."); In re 495 Cent. Park Ave. Corp., 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992); Beker Indus. Corp., 58 B.R. at 736; In re Hubbard Power & Light, 202 B.R. 680, 685 (Bankr. E.D.N.Y. 1996).

79.     Courts determine the means for providing adequate protection on a case-by-case basis.  See In re Mosello, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996); In re Realty Southwest

Assocs., 140 B.R. 360 (Bankr. S.D.N.Y. 1992); In re Beker Indus. Corp., 58 B.R. 725 (Bankr. S.D.N.Y. 1986); see also In re O'Connor, 808 F.2d 1393, 1396 (10th Cir. 1987); In re Martin, 761 F.2d 472 (8th Cir. 1985).  Adequate protection is provided to protect a secured creditor from any diminution in the value of its interest in the particular collateral during the period of use. See In re 495 Central Park Avenue Corp., 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992); In re Beker Indus. Corp., 58 B.R. at 736; In re Hubbard Power & Light, 202 B.R. 680 (Bankr. E.D.N.Y. 1996).

80.     Pursuant to section 363(c) of the Bankruptcy Code, the Debtors request authorization to use Cash Collateral on an interim basis for a period of 15 days following the Petition Date and on a final basis during the ninety (90) day period following the Petition Date, subject to further court-approved extensions of such period (the "Specified Period") to pay those actual, necessary ordinary course operating expenses set forth in the Budget.  The use of Cash Collateral for the Specified Period will allow the Debtors to organize their financial and business affairs and develop and file a feasible plan of reorganization.  If the Debtors anticipate seeking an extension of time to file their plan, the Debtors may seek a further order of the Court to extend the Specified Period.

81.     In exchange for the use of Cash Collateral, the Debtors propose to grant the Secured Lender, the Easco Secured Creditors and the Eastmond & Sons Secured Creditors adequate protection in the form of replacement liens to the extent that the Debtors' use of the Cash Collateral results in a decrease of such creditors' respective interests in their respective Cash Collateral and (ii) with respect to the Secured Lender, monthly payments of interest at the Wall Street Journal prime rate in the amounts specified in the Budget (the "Adequate Protection").  This form of Adequate Protection is appropriate because the Secured Lender is

already oversecured and the value of all secured creditors' collateral will be preserved and maximized by the expenditure of Cash Collateral necessary to sustain the Debtors' business operations.  See In re Q-C Circuits Corp., 231 B.R. 506, 511 (E.D.N.Y. 1999) (noting that an adequate protection package may provide, among other things, for "replacement liens" or also "cash payments"); In re Cont'l Airlines, Inc., 146 B.R. 536, 539–40 (Bankr. D. Del. 1992) (secured creditor only entitled to adequate protection to the extent the collateral declined in value); In re Pursuit Athletic Footwear, Inc., 193 B.R. 713, 716 (Bankr. D. Del. 1996) (if there is no diminution in the value of the secured creditor's collateral and the debtor can operate profitably postpetition, the secured creditor is adequately protected against the use of cash collateral).

82.      The use of the Cash Collateral is essential to the Debtors' rehabilitation efforts. The Debtors require the ability to pay expenses to preserve the going concern value of their operations.  Authorization to utilize Cash Collateral will provide the Debtors with the liquidity necessary to operate their business and pay the various expenses associated therewith.  Without authorization to utilize the Cash Collateral, the Debtors' business operations will be severely interrupted, if not completely terminated, and serious and irreparable harm to the Debtors and their estates would occur.

83.      The Debtors have no access to cash other than the proceeds derived from business operations.

84.      In order to avoid immediate and irreparable harm, pending the Final Hearing, the Debtors respectfully ask the Court to allow the Debtors to use the Cash Collateral on an emergency basis, pursuant to the terms and conditions of the Interim Cash Collateral Order and to make payments of necessary ordinary course expenses, as identified in the Budget.

85.     At the Final Hearing, the Debtors will seek authority from the Court to use Cash Collateral through the Specified Period for the payment of ordinary course expenses in accordance with the Budget.  If the Debtors anticipate a need to use additional Cash Collateral beyond the Specified Period, the Debtors may seek a further order of this Court.

86.     Based on the foregoing, it is respectfully submitted that this Court should authorize the Debtors' use of Cash Collateral on an emergency basis and, after a Final Hearing, for the remainder of the Specified Period.

## NOTICE

87.     Notice of the hearing on this Motion and proposed Interim Order will be provided by email, facsimile or overnight delivery of a copy to (a) the Secured Lender, by its counsel, (b) the twenty (20) largest unsecured creditors of the Debtors; (c) all known creditors who have or assert liens against the Debtors' assets; (d) the United States Attorney's Office for the Southern District of New York; (e) the Office of the United States Trustee for the Southern District of New York; (f) Office of the Attorney General of the State of New York; (g) New York City Law Department, and (h) all parties filing a notice of appearance in these cases (the "Notice Parties").

88.     Pursuant to Bankruptcy Rule 4001, the Debtors respectfully request that they be authorized to serve notice of the Final Hearing and a proposed Final Cash Collateral Order upon the Notice Parties, on or before a date to be set by the Court, and upon counsel to any official committee appointed herein, within one day after the Debtors' receive notice of the appointment of such counsel.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice need be given.

## NO PRIOR REQUEST

89.    No prior request for the relief sought in this Motion has been made to this or any other court.

**WHEREFORE**, the Debtors respectfully request that the Court enter an order granting the relief requested herein, and such other and further relief as is just and proper.

Dated:    New York, New York
          December 1, 2015

                              **KLESTADT WINTERS JURELLER**
                              **SOUTHARD & STEVENS, LLP**


                    By:    */s/ Tracy L. Klestadt*
                           Tracy L. Klestadt
                           Stephanie R. Sweeney
                           Maeghan J. McLoughlin
                           200 West 41st St., 17th Fl.
                           New York, New York 10036
                           Tel: (212) 972-3000
                           Fax: (212) 972-2245
                           Email: tklestadt@klestadt.com


                           *Proposed Counsel to the Debtors and Debtors*
                           *in Possession*