**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| A. L. Eastmond & Sons, Inc., et al., | Case No. 15-13214 (SHL) |
| Debtors. | (Jointly Administered) |

**ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 363 OF THE**
**BANKRUPTCY CODE AUTHORIZING SALE OF PROPERTY FREE AND CLEAR OF**
**ALL LIENS, CLAIMS AND ENCUMBRANCES AND "AS IS" AND "WHERE IS"**

Upon the motion (the "Sale Motion")[1] of Easco Boiler Corp., as reorganized debtor ("Easco Boiler"), dated September 23, 2016, for entry of an order pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing the sale of Easco Boiler's property located at 1225 Randall Avenue, Bronx, New York (the "Property") free and clear of all liens, claims and encumbrances, but otherwise "as is" and "where is", to 1225 Randall Avenue, LLC (the "Purchaser"), as described in the Sale Motion and that certain Sale Agreement by and between Easco Boiler Corp. and the Purchaser, as amended and restated as of October 18, 2016, a copy of which is attached hereto as Exhibit A (as may be further amended from time to time, the "Sale Agreement"); and upon this Court's Findings of Fact, Conclusions of Law and Order Confirming Debtors' Second Amended Chapter 11 Plan of Reorganization Pursuant to 11 U.S.C. § 1129 and Fed. R. Bankr. P. 3020, dated July 6, 2016 [Docket No. 154] ("Confirmation Order"), confirming the Debtors' Second Amended Chapter 11 Plan of

---

[1] Unless otherwise indicated, terms capitalized but not defined herein shall have the meanings assigned to them in the Sale Motion.

Reorganization [Docket No. 141] (the "Plan") and approving the bid procedures for the sale of

the Property in accordance with bid procedures substantially in the form attached to the Plan as

Exhibit B (the "Bid Procedures"); and, in accordance with the Bid Procedures, four (4) Qualified

Bids having been timely received and an Auction having been held on October 18, 2016; and

1225 Randall Avenue, LLC having made the highest or best offer and having been designated

the Successful Bidder and Purchaser in the sum of $3,575,000; and due notice having been given

to all parties entitled thereto and no other or further notice need be provided;

   **NOW, THEREFORE**, upon the entire record of the Sale Hearing and all prior

proceedings in this case, and after due deliberation thereon and good cause appearing therefor;

   **IT IS HEREBY FOUND AND DETERMINED THAT:**

   A. This Court has jurisdiction over the Sale Motion and the relief requested

therein pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to

28 U.S.C. § 157(b)(2)(A) and (N).  Venue of these cases and the Sale Motion in this district is

proper under 28 U.S.C. §§ 1408 and 1409.

   B. The statutory predicates for the relief sought in the Sale Motion are

sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004.

   C. Proper notice of the Sale Motion and the relief requested therein, the

Auction, the Sale Hearing, and related transactions described in the Sale Agreement, including,

without limitation, any termination rights contained in the Sale Agreement (all such transactions

being collectively referred to as the "Sale Transaction"), has been provided in accordance with

sections 102(1) and 363 of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004 and in

compliance with the Bid Procedures and the Plan to all interested persons and entities, including

(i) the Office of the United States Trustee; (ii) counsel to the Secured Lender; (iii) counsel to the

95743937.2

Purchaser; (iv) all persons who made their interest in the property known to Easco Boiler, its counsel and/or its Broker or asserted any liens against or an interest in the Property, including, but not limited to, all those parties identified in New York Abstract Services, Inc.'s title commitment NYAS-4839-B dated September 5, 2016 with respect to the Property; (v) the Internal Revenue Service; (vi) New York State Department of Taxation and Finance; (vii) Corporation Counsel for the City of New York; (viii) Office of the United States Attorney; (ix) Office of the New York State Attorney General; (x) New York City Department of Finance (xi) counsel to NYCTL 2015-A Trust and the Bank of New York Mellon, as Collateral Agent and Custodian; (xii) all known creditors and parties-in-interest; (xiii) all entities having filed a notice of appearance; and (xiv) all others who are entitled to notice pursuant to Bankruptcy Rule 2002.

D.      As demonstrated by the testimony and other evidence proffered or submitted and the representations of counsel made at the Sale Hearing, Easco Boiler has marketed the Property and conducted the sale process in compliance with the Bid Procedures.

E.      Creditors, parties-in-interest and other entities have been afforded a reasonable opportunity to bid for the Property and to object or be heard with respect to the Sale Motion and the relief requested therein.

F.      Easco Boiler has full corporate power and authority to consummate the Sale Transaction pursuant to the Sale Agreement and all other documents contemplated thereby, and no consents or approvals, other than those expressly provided for in the Sale Agreement, are required for Easco Boiler to consummate the Sale Transaction.

G.      Approval of the Sale Agreement and consummation of the Sale Transaction are in the best interests of Easco Boiler and its creditors and the estate, and other parties-in-interest.

95743937.2

H.    Easco Boiler has demonstrated good, sufficient, and sound business purpose and justification and compelling circumstances for the Sale pursuant to section 363(b) of the Bankruptcy Code.

I.    The Sale Agreement was negotiated, proposed and entered into by and between Easco Boiler and the Purchaser without collusion, in good faith, and from arm's-length bargaining positions.  Neither Easco Boiler nor the Purchaser has engaged in any conduct that would permit the avoidance of the Sale Agreement or the Sale Transaction or the imposition of costs or damages under section 363(n) of the Bankruptcy Code.  The Purchaser is not an "insider" or "affiliate" of Easco Boiler (as those terms are defined in the Bankruptcy Code).

J.    The Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby in that: (i) the Purchaser recognized that Easco Boiler was free to deal with any other party interested in a transaction regarding the Sale; (ii) the Purchaser agreed to provisions in the Sale Agreement that would enable Easco Boiler to accept a higher and better offer in respect of the Sale; (iii) the Purchaser made the highest or best Qualified Bid in respect of the Sale; (iv) all payments to be made by or to the Purchaser and other agreements or arrangements entered into by the Purchaser in connection with the Sale Transaction have been disclosed; and (v) the negotiation and execution of the Sale Agreement and any other agreements or instruments related thereto was in good faith and at arm's-length between the Purchaser and Easco Boiler.  The Purchaser has at all times acted in good faith and will continue to be acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the Sale Transaction.

K.    The Sale of the Property is an essential element of the Plan, and the consummation of the closing of the Sale will be a transfer under, pursuant to, in connection with

4

95743937.2

and in furtherance of such Plan. Accordingly, the sale, transfer, assignment and conveyance of the Property to the Purchaser shall be entitled to the protections afforded under section 1146(a) of the Bankruptcy Code, as interpreted by the Supreme Court in *Florida Department of Revenue v. Piccadilly Cafeterias, Inc.*, 128 S.Ct. 2326 (2008), and such Sale and transfer and delivery of any and all instruments of transfer in connection therewith shall be exempt from real estate transfer, stamp, sales, use, mortgage recording, and similar taxes, including, without limitation, from all New York State and New York City transfer, stamp, sales, use, mortgage recording and similar taxes. *See Florida Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 128 S.Ct. 2326 (2008); *see also* N.Y. Tax law § 1405(b)(8).

L.    The terms and conditions of the Sale Agreement are fair and reasonable. The consideration provided by the Purchaser for the Property pursuant to the Sale Agreement (i) is fair and reasonable; (ii) is the highest or best offer for the Property; (iii) will provide a greater recovery for creditors than would be provided by any other practical available alternative; and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

M.    Except as set forth in the Sale Agreement, the Purchaser is not and will not be liable to any agent, broker, person or firm acting or purporting to act on behalf of Easco Boiler or the Purchaser for any commission, broker's fee or finder's fee respecting the Sale Transaction.

N.    The Property constitutes property of the estate. Easco Boiler is the sole and lawful owner of the Property and holds good title thereto, subject only to the Permitted Exceptions (as defined in the Sale Agreement).  The transfer of the Property to the Purchaser will

be a legal, valid, and effective transfer of the Property and will vest the Purchaser with all right, title, and interest of Easco Boiler in and to the Property free and clear of all liens, claims, interests, obligations, rights, charges and encumbrances, violations, complaints, job filings, open permits and inspections, Department of Building violations, Boiler requirements, or Fire Department violations issued against Easco Boiler and the Property, except for the Permitted Exceptions as specifically provided in the Sale Agreement.

O.      The Property is sold free and clear of all, liens, interests, obligations, rights, encumbrances, pledges, mortgages, deeds of trust, security interests, claims (including, any "claim" as defined in section 101(5) of the Bankruptcy Code), charges, options, rights of first refusal, easements, servitudes, agreements, loans, union claims, pension claims, judgments, trade accounts payable balances, overages, factoring, intercompany financial liabilities, guarantees, leases, contingencies, personal liability, environmental liability, products liability, litigation claims, successor liability, hypothecations, demands, licenses, sublicenses, assignments, debts, obligations, guaranties, options, restrictions, and options, in each case of whatever kind, nature, or description in, against or with respect to any of the Property, having arisen, existed or accrued prior to and through the closing of the Sale Transaction (the "Closing"), whether known or unknown, of record or not of record, direct or indirect, absolute or contingent, choate or inchoate, fixed or contingent, matured or unmatured, liquidated or unliquidated, arising or imposed by agreement, understanding, law, equity, statute or otherwise, and whether arising prior to, on or after the Petition Date, except for Permitted Exceptions as expressly provided in the Sale Agreement, because one or more of the standards set forth in section 363(f)(1) – (5) has been satisfied with regard to each such Lien, Claim and/or Interest. Those parties with Liens, Claims and/or Interests in or with respect to the Property who did not

object, or who withdrew their objections to the Sale Transaction or the Sale Motion are deemed

to have consented to the sale of the Property free and clear of those parties' Liens, Claims and/or

Interests in the Property pursuant to section 363(f)(2) of the Bankruptcy Code.  Those parties

with Liens, Claims and/or Interests in or with respect to the Property who objected to the Motion,

but who did not withdraw any such objection, can be compelled to accept a monetary satisfaction

of their Liens, Claims and/or Interests within the meaning of section 363(f)(5) of the Bankruptcy

Code, or applicable nonbankruptcy law permits sale of the Property free and clear of such Liens,

Claims and/or Interests under section 363(f)(1).

    P.  The transfer of the Property to the Purchaser (i) does not constitute an

avoidable transfer under the Bankruptcy Code or under applicable bankruptcy or non-bankruptcy

law and (ii) does not and will not subject the Purchaser to any liability whatsoever with respect

to the operation of Easco Boiler's business prior to the Closing or by reason of such transfer

under the laws of the United States, any state, territory, or possession thereof, or the District of

Columbia, based, in whole or in part, directly or indirectly, in any theory of law or equity

including, without limitation, any laws affecting successor, alter ego, piercing the corporate veil,

transferee or vicarious liability.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND**

**DECREED THAT:**

**General Provisions**

    1.  The Sale Motion is hereby granted in its entirety.

    2.  The findings of fact set forth above and conclusions of law stated herein

shall constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule

7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any

7

finding of fact later shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law later shall be determined to be a finding of fact, it shall be so deemed.

3.    Any objections to the Sale Motion or the relief requested therein have been withdrawn or are hereby overruled on their merits with prejudice.

## Approval of the Sale Agreement

4.    The Sale Transaction, and all of the terms and conditions and transactions contemplated by the Sale Agreement, are hereby authorized and approved pursuant to sections 105(a) and 363(b) of the Bankruptcy Code.  Easco Boiler is authorized and directed to execute and deliver the Sale Agreement and any additional instruments and documents that may be reasonably necessary or desirable to implement the Sale Agreement and to take such other actions as reasonably necessary or desirable to consummate and close the Sale Transaction and convey the Property to the Purchaser in accordance with the terms and conditions of the Sale Agreement and this Order.

## Transfer of the Property

5.    Except for the Permitted Exceptions listed on Exhibit A-1 to the Sale Agreement, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, upon the Closing, the Property (and good and marketable title to such Property) and all of Easco Boiler's rights, title and interest therein shall be transferred to the Purchaser free and clear of all Liens, Claims and/or Interests, with all such Liens, Claims and/or Interests to attach to the net cash proceeds of the Sale Transaction (if any) in the order of their priority, with the same validity, force and effect which they now have as against the respective Property, subject to any claims and defenses,

95743937.2

setoffs or rights of recoupment Easco Boiler or its estate may possess with respect thereto, and without any recourse or remedy against the Purchaser.

6.       Except for the Permitted Exceptions listed on Exhibit A-1 to the Sale Agreement, as expressly provided in the Sale Agreement, all persons and entities (and their respective successors and assigns) including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade and other creditors, holding Liens, Claims and/or Interests (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated) against, in or with respect to Easco Boiler or the Property arising or accruing under or out of, in connection with, or in any way relating to, Easco Boiler, the Property, the operation of Easco Boiler's business prior to the Closing, or the transfer of the Property to the Purchaser, hereby are forever barred, estopped, and permanently enjoined from asserting such persons' or entities' Liens, Claims and/or Interests against the Property or the Purchaser or any of the Purchaser's successors or assigns.  Following the Closing, no holder of a Lien, Claim and/or Interest shall interfere with the Purchaser's title to or use and enjoyment of the Property based on or related to such Lien, Claim and/or Interest or any actions taken in these Chapter 11 cases.  The Purchaser shall have no liability for any Claims (as defined in section 101(5) of the Bankruptcy Code) against Easco Boiler or the estate.

7.       The transfer of the Property to the Purchaser pursuant to the Sale Agreement constitutes a legal, valid, and effective transfer of the Property, and shall vest the Purchaser with all right, title, and interest of Easco Boiler in and to the Property.

95743937.2

**Additional Provisions**

8.      Without limiting the other terms of this Order, prior to or upon the Closing, the Easco Boiler's creditors are authorized and directed to execute such documents and take all other actions as may be necessary to release their interests, if any, in the Property as such Liens, Claims and/or Interests may have been recorded or may otherwise exist.

9.      Except for the Permitted Exceptions, this Order (i) shall be effective as a determination that, upon the Closing, all Liens, Claims and/or Interests existing with respect to Easco Boiler and/or the Property prior to the Closing have been unconditionally released, discharged and terminated as to the Purchaser and the Property, and that the conveyances described herein have been effected; and (ii) shall be binding upon all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Property.

10.      Easco Boiler's sale, transfer, assignment and conveyance of the Property to the Purchaser is entitled to the protections afforded under section 1146(a) of the Bankruptcy Code, as interpreted by the Supreme Court in *Florida Department of Revenue v. Piccadilly Cafeterias, Inc.*, 128 S.Ct. 2326 (2008), and section 1405(b)(8) of the New York Tax Law. Each and every federal, state, and local governmental agency or department or office, including each and every New York State and New York City governmental agency or department or office, is hereby directed to accept this Order and any and all documents and instruments necessary and

95743937.2

appropriate to consummate the transactions contemplated by the Sale Agreement, all without imposition or payments of any real estate transfer, stamp, sales, use, mortgage recording, or similar taxes.

11.    Without limiting the other provisions of this Order, if any person or entity that has filed financing statements, tax lien sale certificates, mortgages, mechanic's liens, *lis pendens* or other documents or agreements evidencing interests with respect to Easco Boiler and/or the Property shall not have delivered to Easco Boiler prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all interests which the person or entity has with respect to Easco Boiler, the Property or otherwise, then (i) Easco Boiler is hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Property; and (ii) the Purchaser and/or Easco Boiler are hereby authorized to file, register, or otherwise record a copy of this Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Liens, Claims and/or Interests in, against or with respect to Easco Boiler and/or the Property.  This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, and local governmental agency, department, or office.

12.    All entities that are presently, or on the Closing may be, in possession of some or all of the Property are hereby directed to surrender possession of the Property to the Purchaser upon the Closing.

13.    From and after the date hereof, Easco Boiler or any creditor or other party in interest shall not take or cause to be taken any action that would interfere with the transfer of the Property to the Purchaser in accordance with the terms of this Order.

95743937.2

14.     Except with respect to liabilities expressly assumed in the Sale Agreement, the Purchaser shall not have any liability or other obligation of Easco Boiler arising under or related to the Property.  Without limiting the generality of the foregoing, and except as otherwise specifically provided herein or in the Sale Agreement, the Purchaser shall not be liable for any claims against Easco Boiler or any of their predecessors or affiliates, and the Purchaser shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger or substantial continuity, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, asserted or unasserted, liquidated or unliquidated, with respect to Easco Boiler or any obligations of Easco Boiler arising prior to the Closing, including, but not limited to, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Property prior to the Closing.

15.     Simultaneous with the Closing, Easco Boiler shall remit the proceeds of the Sale Transaction (i) in full satisfaction of secured claims against the Property that are senior to the Secured Lender's Claim (exact amounts to be determined as of Closing), including all real estate taxes due and payable and real estate tax liens on the Property (ii) in satisfaction of recording fees and service charges to the title company; (iii) to the Broker (Keen-Summit Capital Partners LLC ("Keen") and Keller Williams Realty NYC Group ("KW")) in the amount of three percent (3%) to Keen and three percent (3%) to KW, as previously approved by this Court, without the need for Keen and/or KW to file any further fee applications; (iv) to Easco Boiler's professionals, on a pro rata basis, in payment of allowed outstanding administrative claims for professional fees, solely to the extent approved by this Court and up to $350,000; and (v) in the

95743937.2

remaining amount to the Secured Lender in full release of the Secured Lender's Liens, Claims and Interests against the Property.

16.     This Court hereby retains jurisdiction, including in accordance with the Plan, to enforce and implement the terms and provisions of the Sale Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects including, but not limited to, retaining jurisdiction to (i) compel delivery of the Property to the Purchaser in accordance with the terms of the Sale Agreement; (ii) resolve any dispute, controversy or claim arising under or related to the Sale Agreement, or the breach thereof; and (iii) interpret, implement, and enforce the provisions of this Order and resolve any disputes related thereto.

17.     Nothing contained in the Plan or the Confirmation Order shall modify the provisions of the Sale Agreement or the terms of this Order.

18.     Pursuant to Section 4 of the Sale Agreement, the closing of the sale shall occur not more than fifteen (15) days after entry of this Order, which has not been stayed or appealed, but in no event later than forty-five (45) days from the date of execution of the Sale Agreement, subject to a five (5) day grace period. In the event of any inconsistency between the Bid Procedures and this Order, this Order shall control.

19.     Pursuant to Section 3.2 of the Sale Agreement, Easco Boiler's time to obtain entry of this Order shall be and hereby is extended upon consent of the Purchaser from October 19, 2016 to and including October 27, 2016.

20.     The transactions contemplated by the Sale Agreement are undertaken by the Purchaser in good faith, as that term is used in section 363(m) of the Bankruptcy Code. The Purchaser is a purchaser in good faith and is entitled to all of the protections afforded by section

13

95743937.2

363(m) of the Bankruptcy Code.  Accordingly, any reversal or modification on appeal of the authorization provided herein to consummate the Sale Transaction shall not affect the validity of the Sale Transaction.

21.    The terms and provisions of the Sale Agreement and this Order shall be binding in all respects upon, and shall inure to the benefit of, Easco Boiler, creditors of the estate, the Purchaser, and any of such parties' respective affiliates, designees, successors, and assigns, and shall be binding in all respects upon all creditors, all prospective and actual bidders for the Property, and all persons and entities receiving notice of the Sale Motion, the Auction and/or the Sale Hearing, notwithstanding any subsequent appointment of any trustee, examiner, or receiver under any chapter of the Bankruptcy Code or any other law, and all such provisions and terms shall likewise be binding on such trustee, examiner, or receiver and shall not be subject to rejection or avoidance by Easco Boiler, its estate or creditors, or any trustee, examiner, or receiver.

22.    The automatic stay provisions of section 362 of the Bankruptcy Code are lifted and modified to the extent necessary to implement the terms and conditions of the Sale Agreement and the provisions of this Order.

23.    The failure specifically to include any particular provision of the Sale Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Sale Agreement be authorized and approved in its entirety.

24.    The Sale Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by both parties, and in accordance with the terms thereof, without further order of this

95743937.2

Court, provided that any such modification, amendment or supplement does not have a material

adverse effect on Easco Boiler or the estate.


Dated:      New York, New York
            October 21, 2016

                                        _*/s/ Sean H. Lane*_
                                        HONORABLE SEAN H. LANE
                                        UNITED STATES BANKRUPTCY JUDGE

## AMENDED AND RESTATED AGREEMENT OF SALE

**THIS AGREEMENT OF SALE** is made this 18th day of October, 2016, by and between Easco Boiler Corporation ("*Seller*"), as debtor and debtor-in-possession under a confirmed Plan (as defined below) in a case under chapter 11 of Title 11 of the United States Code (the "*Bankruptcy Code*"), and 1225 Randall Avenue LLC ("*Purchaser*"); Seller and Purchaser sometimes together referred to as the "*Parties*".

## WITNESSETH:

**WHEREAS**, for purposes of this Agreement, Seller is a debtor and debtor-in-possession in a chapter 11 bankruptcy case entitled *In re A. L. Eastmond & Sons, Inc., et al.*, Case No. 15-13214 (SHL) ("*Bankruptcy Case*") pending before the United States Bankruptcy Court for the Southern District of New York (the "*Bankruptcy Court*"); and

**WHEREAS**, on July 6, 2016, the Bankruptcy Court entered its Findings of Fact, Conclusions of Law and Order Confirming Debtors' Second Amended Chapter 11 Plan of Reorganization Pursuant to 11 U.S.C. § 1129 and Fed. R. Bankr. P. 3020 [Docket No. 154] ("*Confirmation Order*"), confirming the Seller's Second Amended Chapter 11 Plan of Reorganization [Docket No. 141] (the "*Plan*"); and

**WHEREAS**, the bankruptcy estate of Seller is the fee title owner of that certain parcel of land bearing a street address of **1225 Randall Avenue, Bronx, New York,** as more particularly described in Exhibit "A" attached to this Agreement (the "*Premises*"); and

**WHEREAS**, Seller desires to sell to Purchaser and Purchaser agrees to purchase from Seller the Premises on the terms and subject to the conditions of this Agreement and pursuant to the Plan; and

**WHEREAS,** this Agreement is subject in all respects to the review and approval of the Bankruptcy Court; and

**WHEREAS, the Parties agree that the recitals set forth above and below are integral and material portions of this Agreement.**

**NOW, THEREFORE,** Seller and Purchaser, being legally bound and authorized, **DO HEREBY AGREE AS FOLLOWS:**

1.      **DEFINITIONS.**  For purposes of this Agreement, the following words and terms shall have the meanings specified in this Section 1:

    (a)   "*363 Motion*" has the meaning assigned to it in Section 3.1.

    (b)   "*Agreement*" means when fully executed by Seller and Purchaser, this Agreement of Sale, together with all Exhibits annexed hereto.

(c) "*Auction*" has the meaning assigned to it in <u>Section 3.1.</u>

(d) "*Back-Up Bidder*" has the meaning assigned to it in the Bid Procedures.

(e) "*Bankruptcy Case*" has the meaning assigned to it in the recitals hereto.

(f) "*Bankruptcy Code*" has the meaning assigned to it in the Preamble.

(g) "*Bankruptcy Court*" has the meaning assigned to it in the recitals hereto.

(h) "*Bankruptcy Rules*" has the meaning assigned to it in <u>Section 3.2.</u>

(i) "*Bid Procedures*" has the meaning assigned to it in <u>Section 3.1.</u>

(j) ~~"*Break-up Fee*" has the meaning assigned to it in Section 3.6.~~

(k) "*Broker*" means, collectively, Keen-Summit Capital Partners LLC and Keller Williams Realty NYC Group.

(l) "*Business Day*" means any day that is not a Saturday, Sunday or federal or state holiday in the state of New York, United States. Should any deadline set forth herein for any action fall on a day that is not a Business Day, such deadline shall be automatically extended to the next day that is a Business Day.

(m) "*Clean Water Act*" has the meaning assigned to it in <u>Section 6.</u>

(n) "*Closing*" has the meaning assigned to it in <u>Section 4.1.</u>

(o) "*Closing Date*" means the date and time specified in <u>Section 4.1</u> of this Agreement on which title to the Premises is conveyed to Purchaser pursuant to this Agreement.

(p) "*Date of this Agreement*" shall mean the date when an original Agreement, fully executed by Seller and Purchaser, together with all Exhibits annexed hereto is received by Purchaser.

(q) "*Deed*" has the meaning assigned to in in <u>Section 10.1(a).</u>

(r) "*Deposit*" has the meaning assigned to it in <u>Section 2.1(a).</u>

(s) "*Escrow Agent*" means Day Pitney LLP.

(t) "*Execution Date*" means the date upon which a fully executed copy of this Agreement has been delivered to both Seller and Purchaser.

(u) "*Liens*" means all liens, claims and encumbrances, other than Permitted Exceptions.

(v) "*Minimum Overbid*" has the meaning assigned to it in <u>Section 3.1.</u>

(w) "*Permitted Exceptions*" has the meaning assigned to it in <u>Section 5.1.</u>

(x) "*Plan*" has the meaning assigned to it in the recitals hereto.

(y) "*Premises*" has the meaning assigned to it in the recitals hereto.

(z) "*Purchase Price*" has the meaning assigned to it in <u>Section 2.1.</u>

95441064.3
95441064.7

(aa) *"Purchaser"* has the meaning assigned to it in the Preamble.

(bb) *"Sale Order"* has the meaning assigned to it in <u>Section 3.1</u>.

(cc) *"Secured Lender"* means CCHP, LLC, as Seller's pre-petition secured lender, with respect to its right to credit bid for the Property under Section 363(k) of the Bankruptcy Code.

(dd) *"Seller"* has the meaning assigned to it in the Preamble.

(ee) *"Successful Bidder"* has the meaning assigned to it in the Bid Procedures.

(ff) *"Title Company"* means New York Abstract Services, Inc. or such company licensed in the State of New York chosen by Purchaser.

## 2. <u>PURCHASE PRICE, ESCROW OF DEPOSIT.</u>

**2.1 <u>Payment of Purchase Price.</u>** The Purchase Price for the Premises (the *"Purchase Price"*) shall be the sum of THREE MILLION FIVE HUNDRED SEVENTY-FIVE THOUSAND AND 00/100 DOLLARS ($3,575,000.00). The Purchase Price shall be paid as follows:

(a) Seller acknowledges Purchaser's deposit with the Escrow Agent by a bank wire transfer of immediately available federal funds to an account designated by Escrow Agent or by official bank check the sum of TWO HUNDRED SEVENTY-FIVE THOUSAND AND 00/100 DOLLARS ($275,000.00) (the *"Initial Deposit"*). The Initial Deposit is being held by Escrow Agent in accordance with the terms and conditions of <u>Section 2.2</u>. The escrow depository is Bank of America, 1 Atlantic Street, Stamford CT 06901. No later than October 19, 2016, Purchaser shall deposit an additional deposit of $82,500.00 increasing the Initial Deposit to THREE HUNDRED FIFTY-SEVEN THOUSAND FIVE HUNDRED AND 00/100 DOLLARS ($357,500.00), and the same shall be hereafter referred to as the "<u>Deposit</u>".

(b) The balance of the Purchase Price THREE MILLION TWO HUNDRED SEVENTEEN THOUSAND FIVE HUNDRED AND 00/100 DOLLARS ($3,217,500.00), as adjusted by prorations and credits, shall be paid by Purchaser on the Closing Date by wire transfer of immediately available federal funds to an account or accounts designated in writing by Seller.

**2.2 <u>Escrow of Deposit.</u>**

(a) The Deposit shall be delivered to the Escrow Agent. The Escrow Agent shall hold the proceeds thereof in escrow in an insured non-interest-bearing bank account (or as otherwise agreed in writing by Seller, Purchaser and the Escrow Agent) until the Closing or earlier termination of this Agreement and shall pay over or apply the Deposit in accordance with the terms of this Agreement. At the Closing, the Escrow Agent shall pay the Deposit or apply the Deposit in accordance with the terms of this Agreement. If for any reason the Closing does not occur and either party makes a written demand upon the Escrow Agent for payment of

-3-

the Deposit, the Escrow Agent shall give written notice to the other party of such demand. If the Escrow Agent does not receive a written objection from the other party to the proposed payment within five (5) Business Days after the giving of such notice, the Escrow Agent is hereby authorized to make such payment. If the Escrow Agent does receive a written objection within such five (5)-Business Day period or if for any other reason the Escrow Agent in good faith shall elect not to make such payment, the Escrow Agent shall continue to hold the Deposit until otherwise directed by written instructions from Seller and Purchaser or a final judgment of a court. The Escrow Agent shall, however, have the right at any time to deposit the Deposit with a Clerk of the Bankruptcy Court, giving written notice of such deposit to Seller and Purchaser. Upon such deposit the Escrow Agent shall be relieved and discharged of all further obligations and responsibilities hereunder, after transfer to the Clerk except with respect to the Escrow Agent's gross negligence, bad faith or willful disregard of this Agreement.

(b)     The parties acknowledge that the Escrow Agent is acting solely as a stake holder at their request and for their convenience, and the Escrow Agent shall not be liable to either of the parties for any act or omission on its part unless taken or suffered in bad faith, in willful disregard of this Agreement or involving gross negligence. Seller and Purchaser shall jointly and severally indemnify and hold the Escrow Agent harmless from and against all costs, claims and expenses, including reasonable counsel fees, incurred in connection with performance of the Escrow Agent's duties hereunder, except with respect to actions or omissions taken or suffered by the Escrow Agent in bad faith, in willful disregard of this Agreement or involving gross negligence on its part. The Escrow Agent has acknowledged acceptance of these provisions by signing in the place indicated on the signature page of this Agreement.

(c)     Purchaser acknowledges that Escrow Agent is also acting as counsel for Seller in connection with the sale of the Premises, and Purchaser acknowledges that it is aware of the potential for actual or apparent conflict of interest which may arise in connection with such representation and Escrow Agent's performance of its duties hereunder. Purchaser hereby waives all rights to object to such conflict of interest and releases Escrow Agent from any liability in connection with such conflict of interest, although not from liability for default under this Agreement. Purchaser hereby consents to Escrow Agent's continuing representation of Seller in all matters relating to the sale of the Premises, expressly including any dispute relating to this Agreement.

3.     **BANKRUPTCY COURT MATTERS.**

3.1     **363 Motion.**     Seller agrees that as promptly as practicable after the date hereof, but in no event later than five (5) Business Days after the Execution Date, Seller shall file with the Bankruptcy Court a motion reasonably acceptable to Purchaser (the "*363 Motion*") seeking an order (the "*Sale Order*") that approves this Agreement and the sale contemplated hereby, subject to the bid procedures annexed to the 363 Motion (the "*Bid Procedures*") to be followed in the event an auction sale (the "*Auction*") is to be held to consider a competitive offer for the Premises by any qualified person, which include, without limitation, (ii) that to be deemed a qualified bid at the Auction, the aggregate consideration proposed by such competing bid must equal or exceed $2,875,000.00 (the "*Minimum Overbid*") and (ii) that

95441064.3
95441064.7

the minimum increment for any subsequent bid shall be at least $25,000.00 in excess of the Minimum Overbid, or the previous bid, as applicable. Notwithstanding the foregoing, the Auction has concluded and Purchaser was the winning bidder at the Auction, and the stated Purchase Price herein was the winning bid.

3.2     **Notice and Deadlines**.     Seller shall file all pleadings with the Bankruptcy Court as necessary or appropriate to seek entry of the Sale Order and shall provide timely notice to creditors and all other parties entitled to notice of such pleadings under applicable requirements, including the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"). Seller shall obtain entry of the Sale Order within thirty (30) days after the Execution Date (unless extended by mutual consent of the Seller and Purchaser). Purchaser shall promptly take such actions as are reasonably requested by Seller to assist in obtaining entry of the Sale Order, including without limitation, furnishing affidavits, financial information or other documents or information for filing with the Bankruptcy Court and making Purchaser's employees and representatives available to testify before the Bankruptcy Court.

3.3     **Appeals of Bankruptcy Orders**.     If, following the Closing, the Sale Order shall be appealed by any person (or a petition for certiorari or motion for rehearing, reconsideration or argument shall be filed with respect thereto), Seller and Purchaser, exclusively at their option and expense, shall take all reasonable steps as may be necessary to defend against such appeal, petition or motion, and endeavor to obtain an expedited resolution of same. An appeal (or petition for certiorari or motion for rehearing, reconsideration or argument) of the Sale Order shall not delay or stay the Closing, except if and to the extent that such order has been stayed by the Bankruptcy Court.

3.4     ~~**Competing Offers**.     This Agreement is subject to approval by the Bankruptcy Court and the consideration by Seller of higher or otherwise better competing bids in accordance with the Bid Procedures. If one or more Qualified Bids (as defined in the Bid Procedures) is received prior to the expiration of the Bid Deadline (as defined in the Bid Procedures), Seller shall conduct an open Auction of the Premises in accordance with the Bid Procedures, at which Purchaser shall be permitted to credit bid the Break-Up Fee. At least two (2) Business Days before the Auction, Purchaser shall be notified and provided copies of the Qualified Bids, and Purchaser shall be given the reasonable opportunity to increase its bid to provide the highest or otherwise best offer for the Premises, provided that every bid submitted by Purchaser is a binding bid in accordance with the Bid Procedures.~~

~~Seller shall be permitted to cause its representatives and agents to initiate contact with, solicit or encourage submission of any inquiries, proposals or offers by any person (in addition to Purchaser and its affiliates, agents and representatives) in connection with any sale or other disposition of all or any part of the Premises, so long as Seller does not take any action to encourage the withdrawal of Purchaser's bid.~~

3.5     **Additional Closing Conditions**.

95441064.3
95441064.7

(i)     In addition to the conditions set forth in <u>Section 9</u> hereof, the obligations of the parties to consummate the Closing are conditioned upon the entry by the Bankruptcy Court of the Sale Order, which shall not be stayed, not later thirty (30) days after the Execution Date (unless extended by mutual consent of the Seller and Purchaser), in form and substance mutually acceptable to Seller and Purchaser:

(a)     approving this Agreement and the transactions contemplated herein and finding that this Agreement and the transactions contemplated herein are fair and reasonable and constitute exchanges of fair consideration and reasonably equivalent value under the Bankruptcy Rules and under the laws of the United States and any state, territory or possession thereof;

(b)     finding that (w) notice of the hearing concerning approval of the transactions contemplated hereby was given in accordance with the Bankruptcy Code and Bankruptcy Rules and applicable procedural rules and constitutes adequate notice as is required and appropriate under the particular circumstances in accordance with the Bankruptcy Code and Bankruptcy Rules and any other applicable laws, (x) Seller has the legal power and authority to convey all the rights, title and interest of Seller in and to the Premises, (y) Seller has good and marketable title to or a valid and enforceable interest in all of the Premises and (z) Purchaser is a good faith purchaser entitled to all the protections afforded by Section 363(m) of the Bankruptcy Code;

(c)     providing for the sale and delivery of the Premises to Purchaser free and clear of any and all Liens (other than Permitted Exceptions) to the fullest extent permitted by 11 U.S.C. § 363(f) and case law interpreting Section 363 of the Bankruptcy Code, with such Liens, if any, to attach to the consideration to be received by Seller in the same priority and subject to the same defenses and avoidability, if any, as before the Closing;

(d)     finding that Purchaser has not assumed any liabilities of Seller and providing that Purchaser shall not have any liability as a successor of Seller; and

(e)     ~~providing that, in the event of a credit bid for the Property by the Secured Lender under Section 363(k) of the Bankruptcy Code, Purchaser shall be entitled to an allowed administrative expense claim under Sections 503(b) and 507(a)(2) of the Bankruptcy Code senior to all other unsecured claims (including all administrative expense claims) against Seller in the Bankruptcy Case in the amount of the Break-Up Fee, payable at Closing from the Secured Lender's Cash Collateral (as defined in Section 363 of the Bankruptcy Code) or, if such Cash Collateral is insufficient for such purpose, directly by the Secured Lender.~~

(ii)     Purchaser acknowledges that Seller does not guarantee the satisfaction of the conditions precedent listed in this <u>Section 3.5</u> and that Seller's failure to satisfy such conditions shall not be deemed to be a default hereunder but rather, same shall merely be a failure of a condition to Closing, in which event Purchaser's sole remedy shall be to (i) waive such condition(s) and proceed to Closing, or (ii) terminate this Agreement and receive a refund of the Deposit; provided, however, Seller shall be permitted to adjourn the Closing Date for a period of up to thirty (30) days in order to satisfy any condition precedent that has not been satisfied.

-6-

3.6    ~~Break-Up Fee.  In the event that Seller does not consummate the~~
~~transaction contemplated by this Agreement with Purchaser by reason of Seller's acceptance or~~
~~selection, and the Bankruptcy Court's approval, of a competing bid for the Premises (provided~~
~~the Purchaser is not in default of this Agreement), Seller shall refund the Deposit and, in~~
~~consideration for Purchaser having expended considerable time and expense in connection with~~
~~this Agreement and the negotiation thereof, Purchaser shall be entitled to a break-up fee in an~~
~~amount equal to Two and One-Half Percent (2.5%) of the Purchase Price equal to $68,750.00~~
~~(the "*Break-Up Fee*").  The Break-Up Fee shall be promptly due and payable to Purchaser~~
~~immediately upon the earlier of (a) closing of a transaction resulting from a competing bid~~
~~(including a credit bid by the Secured Lender, in which case the Break-Up Fee shall be paid out~~
~~of Cash Collateral) for the Premises or otherwise directly by the Secured Lender and (b) the~~
~~forfeiting of the deposit of a competing bidder whose bid was accepted by Seller in accordance~~
~~with the procedures set forth in the Bid Procedures.~~

~~Notwithstanding the foregoing, in the event Purchaser is selected as the Back-up~~
~~Bidder in accordance with the Bid Procedures, Seller shall hold the Deposit in escrow and shall~~
~~refund the Deposit to Purchaser within five (5) Business Days following the earliest of (a) the~~
~~closing with the successful competing bidder and (b) the date that is twenty-one (21) days after~~
~~entry of an order by the Bankruptcy Court approving the sale to the successful competing bidder~~
~~(unless such order has been stayed or appealed, in which case the Deposit shall be held until the~~
~~expiration of such stay or resolution of such appeal); provided, however, that if the closing of the~~
~~sale to the successful competing bidder does not occur due to a default by the successful~~
~~competing bidder, Purchaser shall be deemed to be the Successful Bidder, and the Closing shall~~
~~promptly occur with respect to Seller and Purchaser, and the Deposit shall be applied to the~~
~~Purchase Price at Closing.~~

~~Seller acknowledges and agrees that (1) payment of the Break-Up Fee and~~
~~establishment of the Minimum Overbid as set forth herein and in the Bid Procedures are~~
~~reasonable and are material inducements to the Purchaser to enter into the transaction~~
~~contemplated by this Agreement and an integral part of the transaction contemplated by this~~
~~Agreement and (2) Purchaser would not have entered into this Agreement absent, among other~~
~~terms of this Agreement, the Break-Up Fee and Minimum Overbid provisions set forth herein~~
~~and in the Bid Procedures.~~

4.    **CLOSING.**

4.1    **Closing Date.**    Subject to the satisfaction or waiver of all conditions
precedent with respect to each party's obligations, the closing (the "*Closing*") of the sale and
purchase contemplated herein shall occur at the offices of the Escrow Agent on a day and at a
time which is not more than fifteen (15) days after the Bankruptcy Court enters the Sale Order,
which has not been stayed (or, if the Sale Order has been stayed or appealed, twenty-one (21)
days following the expiration of the stay or resolution of the appeal), but in no event later than
forty-five (45) days from the Execution Date (the "*Closing Date*") and TIME SHALL BE OF

95441064.3
95441064.7

THE ESSENCE, subject to a five (5) day grace period, such period being a *final* time of the essence date, with respect to Purchaser's and Seller's obligation to close on the Closing Date.

5. **TITLE MATTERS**.

    **5.1**    **Condition to Title.** The Premises shall be sold and conveyed, and Purchaser shall purchase the Premises, free and clear of all Liens pursuant to Section 363(f) of the Bankruptcy Code, with such Liens to attach to the consideration to be received by Seller in the same priority and subject to the same defenses and avoidability, if any, as before the Closing, subject to: (a) the terms and conditions of the Sale Order, (b) such title exceptions affecting the Premises as the Title Company or any other reputable title insurance company licensed to do business in the State of New York shall, at regular rates, be willing to (i) omit as exceptions to coverage, and (c) those matters listed in Exhibit "A-1" to this Agreement (collectively, the "*Permitted Exceptions*"). Seller and Purchaser hereby expressly agree that the state of title set forth in the Sale Order and Exhibit "A-1" hereto, including the Permitted Exceptions, reflect good, marketable, and acceptable title to the Premises.

    **5.2**    **Title Commitment.** Purchaser is in receipt of a current Commitment for Title Insurance No. NY CT 16-00165-BX issued by the Title Company and committing to issue the title policy for the Premises.

6. **CONDITION OF THE PREMISES.**

    (a)    Purchaser is a sophisticated investor and Purchaser's decision to purchase the Premises is based upon its independent expert evaluations of such facts and materials deemed relevant to Purchaser and its agents. In entering into this Agreement and consummating the transactions contemplated hereunder, Purchaser has not relied upon any oral or written information from Seller or any of Seller's agents, consultants, advisors or representatives, except for Seller's representations and warranties expressly set forth in this Agreement. Without limiting the generality of the foregoing, except as otherwise expressly set forth in this Agreement, PURCHASER ACKNOWLEDGES AND AGREES WITH SELLER THAT PURCHASER IS PURCHASING THE PREMISES IN "AS IS", "WHERE IS" AND "WITH ALL FAULTS" CONDITION ON THE CLOSING DATE, AND TOGETHER WITH ANY LATENT DEFECT OR NON-DISCOVERABLE DEFECT, SPECIFICALLY AND EXPRESSLY WITHOUT ANY WARRANTIES, REPRESENTATIONS OR GUARANTEES, EITHER EXPRESS OR IMPLIED OF ANY KIND, NATURE, OR TYPE WHATSOEVER FROM OR ON BEHALF OF SELLER AND SELLER DISCLAIMS AND PURCHASER WAIVES, RELEASES AND DISCHARGES SELLER FROM ANY AND ALL WARRANTIES, INCLUDING BUT NOT LIMITED TO WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR AS TO ANY ENVIRONMENTAL MATTERS. Seller shall have no obligation to remove any violations against the Premises that exist as of the date of Execution Date or on the Closing Date. Purchaser agrees that its covenants, agreements and obligations under this Agreement shall not be excused or affected by (i) the physical condition of the Premises, the physical condition or operation of the improvements or

95441064.3
95441064.7

personal property, or the fitness, merchantability or suitability of the Premises for any use or purpose, (ii) the compliance or non-compliance with any laws, codes, ordinances, rules or regulations of any governmental authority, or by any violations thereof, (iii) the environmental condition of the Premises or the Premises' compliance or non-compliance with any laws, code, ordinances, rules or regulations of any governmental authority relating to the presence, use, storage, handling or removal of any Hazardous Substances (defined below), (iv) engineering controls, institutional controls, environmental covenants and deed restrictions implemented to address the presence of Hazardous Substances and for the remediation of the Premises to non-residential standards, (v) the current or future use of the Premises, including, but not limited to Purchaser's intended uses of the Premises, (vi) the current or future real estate tax liability, assessment or valuation of the Premises, (vii) the availability or non-availability of any benefits conferred by federal, state or municipal laws, whether for subsidies, special real estate tax treatment or other benefits of any kind, (viii) the availability or unavailability of any licenses, permits, approvals or certificates which may be required in connection with the operation of the Premises, (ix) the compliance or non-compliance of the Premises, in its current or any future state, with applicable zoning ordinances and the ability to obtain a change in the zoning or a variance with respect to the Premises' non-compliance, if any, with any zoning ordinances, or (x) the actual or projected revenue and expenses of the Premises provided in this Agreement. Seller is not liable or bound in any manner by any oral or written statements, representations, real estate brokers, "set-ups," offering memoranda or information pertaining to the Premises furnished by any real estate broker, advisor, consultant, agent, employee, representative or other person. For the purposes of this Agreement, "Hazardous Substances" means: (w) those substances included within the definitions of any one or more of the terms "hazardous substances," "hazardous materials," "toxic substances," and "hazardous waste" in the Comprehensive Environmental, Response, Compensation and Liability Act, as amended, 42 U.S.C. §§9601 and 9657 et seq., the Resource Conservation and Recovery Act of 1976, as amended, 42 U.S.C. §6901 et seq., and the Hazardous Materials Transportation Act, as amended, 49 U.S.C. Sections 1801 et seq. and in the regulations promulgated pursuant to such laws; and (x) such other substances, materials and wastes as are regulated under applicable environmental laws or which are classified as hazardous or toxic under environmental laws; (y) any materials, wastes or substances that are (1) petroleum or in whole or in part derived from petroleum; (2) asbestos or asbestos-containing materials; (3) polychlorinated biphenyls; (4) designed as a "hazardous substance" pursuant to section 311 of the Clean Water Act, as amended, 13 U.S.C. §1321 et seq. (33 U.S.C. §1321) (the "*Clean Water Act*") or designated as "toxic pollutants" pursuant to §307 of the Clean Water Act (33 U.S.C. §1317); (5) flammable explosives; or (6) radioactive materials; and (z) degradation products of any of the foregoing.

7. <u>ACCESS FOR INSPECTIONS.</u>

     **7.1**    Purchaser may request access to the Premises at any time prior to Closing for the purpose of inspecting the Premises upon not less than three (3) Business Days' prior written notice to Seller. All access taken by Purchaser pursuant to the provisions of this

95441064.3
95441064.7

Section 7 shall be in accordance with all the laws, rules and regulations applicable thereto and subject to the terms and conditions of this Agreement. Purchaser hereby agrees to indemnify and hold Seller harmless from any and all Liens, loss, damage, penalties, liabilities or claims arising from Purchaser's exercise of the rights herein granted, including, but not limited to attorney's fees and costs.

      7.2     Prior to any access or entry, Purchaser shall maintain, at Purchaser's sole cost, and shall require any contractor, consultant or agent Purchaser may engage to maintain, at all times as required in this Agreement, the insurance coverage set forth below with good and solvent insurance companies licensed to do business in New York State with full policy limits applying, but not less than as set forth below:

      (a)     Workers' Compensation Insurance as required by laws and regulations applicable to and covering employees of Purchaser, its contractors, consultants or agents;

      (b)     Commercial General Liability Insurance with a broad form contractual liability endorsement and with a combined single limit of not less than Two Million and No/100 Dollars ($2,000,000.00) per occurrence for bodily injury and property damage and an excess umbrella liability policy for bodily injury and property damage in the amount of Five Million and No/100 Dollars ($5,000,000.00); and

      (c)     Business Automobile Liability Insurance covering all vehicles used in the operations of Purchaser with limits of liability of not less than Seven Hundred Fifty Thousand and No/100 Dollars ($750,000.00) combined single limit.

      A certificate naming Seller, its affiliates, successors and assigns as their interests may appear (as advised by Seller to Purchaser), as additional insureds shall be delivered to Seller prior to any entry at the Premises. Such certificate shall provide that any change restricting or reducing coverage or the cancellation of any policies under which certificates are issued shall not be valid as respects the Seller's, or its members', officers', employees', subsidiaries' and affiliates' interest herein until the Seller has received thirty (30) days prior notice in writing of such change or cancellation.

      7.3     The rights granted here shall be at Purchaser's sole risk. Seller shall owe no duty, whatsoever, to anyone utilizing such access to either warn or protect against any risk or hazard whether or not Seller has actual or constructive knowledge of same. During such access, the foregoing personnel shall not cause any interference with the operations of Seller or any other occupant or damage to the Premises. Seller may require that persons granted access be accompanied by Seller's representative.

      7.4     All property inspections and all due diligence are the sole responsibility of Purchaser and any costs associated with same shall be paid for by Purchaser, provided that Seller shall provide Purchaser with such inspections of the Premises and related information in possession of Seller and reasonably requested by Purchaser.

95441064.3
95441064.7

8.     **REPRESENTATIONS.**

Seller and Purchaser do hereby represent and warrant to the other as follows, which representations and warranties shall be true and correct as of the Date of this Agreement and as of the Closing Date:

8.1     <u>Validity</u>.  This Agreement, once approved by the Bankruptcy Court, constitutes a valid and binding obligation of Seller and Purchaser in accordance with its terms.

8.2     <u>Authority</u>.  Subject to Bankruptcy Court approval, Seller and Purchaser have the full right and authority to execute this Agreement and fulfil all of the transactions hereby contemplated, subject to the terms and conditions of the Agreement.

9.     <u>CONDITIONS TO CLOSING.</u>

9.1     <u>Purchaser's Condition.</u>  In addition to the conditions set forth in <u>Section 3.5</u>, the obligation of Purchaser to consummate the transactions contemplated by this Agreement shall be subject to the following conditions: (i) the performance and observance by Seller of all covenants, warranties and agreements of this Agreement to be performed or observed by Seller prior to or on the Closing Date and (ii) the fulfillment on or before the Closing Date of all other conditions precedent to Closing benefiting Purchaser specifically enumerated in this Agreement, any or all of which may be waived in writing by Purchaser in its sole discretion.

9.2     <u>Seller's Condition</u>. In addition to the conditions set forth in <u>Section 3.5</u>, the obligation of Seller to consummate the transactions contemplated by this Agreement shall be subject to the following conditions: (i) the performance and observance by Purchaser of all material covenants and agreements of this Agreement to be performed or observed by Purchaser prior to or on the Closing Date and (ii) the fulfillment on or before the Closing Date of all conditions precedent to Closing benefiting Seller specifically set forth in this Agreement, any or all of which may be waived by Seller in its sole discretion.

10.     <u>ITEMS TO BE DELIVERED AT CLOSING.</u>

10.1     <u>Seller's Deliveries</u>.  At Closing, Seller shall deliver or cause to be delivered to Purchaser the following items executed and acknowledged by Seller, as appropriate:

(a)     A bargain and sale with covenants against grantor's acts (the "*Deed*") attached hereto and made a part hereof in substantially the same form as <u>Exhibit B</u>.

(b)     Sole and exclusive possession of the Premises, free of any tenancies and any rights of possession.

-11-

95441064.3
95441064.7

(c)     Deliver to Purchaser such documents in such form as may be reasonably required by the Title Company, including, but not limited to, an Affidavit of Non-Foreign Status (FIRPTA).

(d)     A copy of the Sale Order.

(e)     Such further instruments, agreements or other documents as may be necessary to effectuate the provisions of this Agreement as identified by the Title Company, the Bankruptcy Court and the Parties.

**10.2     Purchaser's Deliveries**. At Closing, Purchaser shall deliver or cause to be delivered to Seller the following items:

(a)     The balance of the Purchase Price as adjusted under this Agreement in accordance with Section 2.1 (b).

(b)     Such further instruments, agreements and other documents as may be necessary to effectuate the provisions of this Agreement as identified by the Title Company, the Bankruptcy Court and the Parties.

## 11.     CLOSING COSTS AND ADJUSTMENTS.

**11.1     Closing Costs**. Seller shall seek inclusion of terms in the Sale Order that (a) Seller's sale, transfer, assignment and conveyance of the Premises and other assets transferred hereunder to Purchaser shall be entitled to the protections afforded under Section 1146(c) of the Bankruptcy Code, and (b) directing the clerk of the county in which the Premises is located to accept for recording all instruments delivered in connection with the Closing of the transactions contemplated under this Agreement without the imposition, levying or collection of conveyance, stamp, recording or any similar or related kind of taxes, assessment or required payment of any kind. If such a provision is not included, the Parties shall prepare and cause to be filed transfer tax returns indicating exemption by reason of the conveyance being pursuant to the Sale Order. Although the Parties do not believe transfer taxes are payable, Seller shall be solely responsible for paying any transfer or similar taxes with respect to the Premises due as a result of the transactions provided for in this Agreement not avoided under Section 1146(c) of the Bankruptcy Code. The provisions of this Section 11.1 shall survive the Closing or a termination of this Agreement.  Purchaser shall pay (a) the costs of the title insurance premiums for the title policy, and (b) the cost of any title endorsements and affirmative insurance required by Purchaser payable in connection with the conveyance of the Premises. The Seller shall pay  recording charges, if any, payable in connection with the conveyance of the Premises.  Seller and Purchaser shall pay their respective legal, consulting and other professional fees and expenses incurred in connection with this Agreement and this transaction.

**11.2     Adjustments**.  Adjustments shall be made and paid at the Closing as follows:

-12-

(a) All utility, water and sewer charges (as applicable), real estate taxes and assessments, including any special assessments, assessed against the Premises and all fuel charges shall be apportioned as of Closing or credited to Buyer against the Purchase Price.

## 12. ADDITIONAL AGREEMENTS.

Purchaser and Seller represent and agree as follows:

**12.1 Condemnation.** Seller shall provide to Purchaser copies of any notices of Condemnation received by Seller, within seven (7) days of receipt of same. In the event that any material portion of the Premises shall be taken in condemnation or under the right of eminent domain after the Execution Date and before the Closing Date, Purchaser may at its option, either (i) terminate this Agreement or (ii) proceed to Closing under this Agreement and pay the full Purchase Price as set forth in Section 2 of this Agreement as applicable, in which latter event, all awards or settlements under any such proceedings, whether or not made prior to Closing, shall become the right and property of Purchaser. Seller or its designee shall assign to Purchaser any claim or interest therein, and Seller or its designee hereby agrees to execute any documents reasonably required by Purchaser in connection therewith after the Closing. In the event Purchaser terminates this Agreement hereunder, the Deposit shall be returned to Purchaser and this Agreement shall have no further force or effect, whatsoever, except for obligations of Purchaser which have previously accrued hereunder or which survive the expiration of termination of this Agreement.

**12.2. Cooperation.** Seller and Purchaser shall, from time to time, and at Closing, execute and deliver such further instruments as Purchaser or Seller or their counsel or Title Company may reasonably request or require to effectuate the intent of this Agreement and shall otherwise cooperate with each other in furtherance of the purposes of this Agreement.

## 13. REMEDIES; TERMINATION.

**13.1** This sale is a cash sale and is not subject to any financing contingency. Purchaser may not delay the Closing Date or terminate this Agreement due to Purchaser's inability to obtain financing. If Purchaser fails to close on the Closing Date due to a lack of funds, Purchaser shall be in default of this Agreement and Seller's remedy shall be to terminate this Agreement and retain the Deposit made hereunder as liquidated damages. The parties agree that the actual damages upon the Purchaser's default would be extremely difficult or impractical to ascertain and that the Deposit, which has been negotiated, represents a fair and reasonable amount of damages Seller will sustain if Purchaser defaults under this Agreement and fails to close on the Closing Date.

**13.2** In the event Purchaser violates or fails to fulfill or perform any of the terms and conditions of this Agreement required to be performed by Purchaser prior to Closing or if Purchaser fails to consummate the acquisition of the Premises as required hereunder, TIME BEING OF THE ESSENCE, subject to a five (5) day grace period, such period being a **_final_** time of the essence date, with respect to Purchaser's and Seller's obligation to close on the Closing

-13-

Date. Seller may terminate this Agreement upon written notice to the Purchaser and the Deposit shall be retained by Seller, as the Seller's sole and exclusive remedy, as liquidated damages for such violation or failure, whereupon this Agreement shall become null and void, and neither party shall have any further rights or obligations hereunder, except for such obligations as expressly survive the termination of this Agreement. The parties agree that the actual damages upon Purchaser's default would be extremely difficult or impractical to ascertain and that the Deposit, which has been negotiated, represents a fair and reasonable amount of damages that Seller will sustain if Purchaser violates or fails to fulfill and perform any of the terms and conditions of this Agreement required to be performed by Purchaser resulting in a failure to close, under the circumstances existing at the time hereof.

       **13.3**    In the event Seller violates or fails to fulfill or perform any of the terms and conditions of this Agreement required to be performed by Seller prior to Closing or if Seller fails to consummate the sale of the Premises as required hereunder, Purchaser reserves the right to seek specific performance and reasonable legal fees and expenses incurred therefor or at its election, cancel and terminate this Agreement upon written notice to Seller and the Deposit shall be delivered to Purchaser by the Escrow Agent, as the Purchaser's sole and exclusive remedy, whereupon this Agreement shall become null and void, and neither party shall have any further rights or obligations hereunder, except for such obligations as expressly survive the termination of this Agreement.

       **13.4**    Notwithstanding anything to the contrary set forth in this Agreement, in no event shall Seller be liable to Purchaser or to any representatives, agents, affiliates or subsidiaries of Purchaser, for any special, exemplary, indirect or consequential damages, including without limitation any lost profits, loss of business, business interruption, lost savings or other incidental or punitive damages, even if Seller has been advised of the possibility of such damages.

-14-

## 14. BROKER.

Seller represents and warrants to Purchaser that no broker or finder has been engaged by Seller in connection with the sale contemplated under this Agreement other than the Broker. Seller has entered into a separate agreement with the Broker governing the commission payable hereunder, which shall be paid solely by Seller. Purchaser represents and warrants to Seller that no broker or finder has been independently engaged by Purchaser in connection with the sale contemplated under this Agreement other than Feinberg Bros. Agency, Inc. Purchaser has entered into a separate Agreement with Feinberg Bros. Agency, Inc. governing a commission due hereunder which shall be paid by Purchaser. The Parties shall indemnify and hold the other party harmless from and against any loss, liability or expense including, without limitation, reasonable attorneys' fees, by reason of any claim for a real estate sales commission made by any real estate broker or other person alleging relations, conversations or negotiations with it arising out of the transactions contemplated in this Agreement if such claims are based in whole or part in part on dealings or discussions or agreements with the indemnifying party. Nothing contained herein shall be construed to create any rights in any person or entity as a third-party beneficiary to this Agreement. The provisions of this Section 14 shall survive the Closing.

## 15. NOTICES.

No notice, request, consent, approval, waiver or any communications under this Agreement shall be effective unless received, but any such communication shall be deemed to have been given upon receipt of same, if the same is in writing and is sent by hand courier, recognized overnight delivery service, facsimile (followed by postage prepaid regular mail) email (followed by postage prepaid regular mail) or mailed by registered or certified mail return receipt requested, postage prepaid, addressed to the parties at the addresses noted herein below. Copies of all notices shall be provided to each party and the attorney for each party, as applicable, at the respective addresses also noted below:

SELLER:  
Easco Boiler Corp.  
Attn: Arlington Leon Eastmond, Jr.  
1175 Leggett Avenue  
Bronx, New York 10017  
E-mail: teastmond@easco.com

ADDITIONAL NOTICE TO SELLER:  
Day Pitney LLP  
One Canterbury Green  
Stamford, CT 06901  
Attn: James Carlon, Esq.  
E-mail: jcarlon@daypitney.com

PURCHASER:  
1225 Randall Avenue, LLC  
c/o Arnold Kert  
666 Old Country Road  
Garden City, NY 11530

-15-

Attn: Arnold Kert, Esq.
E-mail: Akert@kertlaw.com
Kert & Kert
666 Old Country Road #301
Garden City, NY 11530
Attn: Arnold Kert, Esq.
E-mail: akert@kertlaw.com

## 16. APPLICABLE LAW; LIMITED RIGHT OF ASSIGNMENT BY PURCHASER.

(a)     This Agreement and the performance hereof shall be governed, interpreted, construed and regulated by the laws of the State of New York.

(b)     The rights of Purchaser under this Agreement shall not be assigned by Purchaser without the prior written consent of Seller, except that Purchaser may, on notice to Seller, assign its rights under this Agreement to an entity in which Purchaser has a majority and controlling ownership interest and shall continue through Closing to own the majority and controlling interest and over which Purchaser maintains, and continues to maintain, management and control through Closing, provided further that Purchaser shall continue to remain liable for all financial and other obligations of the Purchaser hereunder both as a direct obligor and as a guarantor of payment to the extent such payment is required under this Agreement. In enforcing any obligation of Purchaser hereunder, Seller need not exhaust any other remedy or first pursue any remedy against any other party or entity, but shall at all times be entitled to seek remedies of any kind or nature, legal or equitable, against Purchaser or its assignee if such is the case.

(c)     Any prohibited assignment of Purchaser's rights under this Agreement shall be deemed a breach of this Agreement entitling Seller, at its option to terminate this Agreement, on notice to Purchaser, and for Seller to retain the entire Deposit as liquidated damages. In that instance, this Agreement shall have no further force or effect, whatsoever, except for those obligations of Purchaser that have previously accrued hereunder.

## 17. SEVERABILITY.

If any term, covenant, condition or provision of this Agreement or the application thereof to any person or circumstance shall at any time and to any extent be found invalid or unenforceable, the remainder of this Agreement or the application of such terms and provisions to persons or circumstances other than those as to which it is held invalid or unenforceable shall not be affected thereby and each term, covenant, condition and provision of this Agreement shall be valid and deemed enforceable to the full extent permitted by law.

## 18. INTERPRETATION.

Wherever herein the singular number is used, the same shall include the plural, and the masculine gender shall include the feminine and neuter genders, and vice versa, as the context shall require. This Agreement may be executed in original or PDF form in several

counterparts, each of which shall be an original, but all of which shall constitute one and the same instrument.

## 19. SECTION HEADINGS.

The section headings in this Agreement are inserted as a matter of convenience for reference and are not to be given any effect whatsoever in construing any provision of this Agreement.

## 20. ENTIRE AGREEMENT.

This Agreement sets forth all of the promises, agreements, conditions and understandings between the parties hereto under the subject matter throughout, and there are no promises, agreements, conditions or understandings, either written or oral, either expressed or implied, between them other than as set forth herein. Except as herein otherwise specifically provided, no subsequent alterations, amendments, changes or additions to this Agreement shall be binding upon either party unless agreed to in writing and signed by each party.

## 21. RECORDING OF AGREEMENT OR MEMORANDUM PROHIBITED.

Purchaser agrees not to record this Agreement or any memorandum of this Agreement. If Purchaser breaches its promise, Seller may declare this Agreement in default and terminate same as provided herein. In that event, Seller shall retain the Deposit, and this Agreement shall have no further force or effect, whatsoever, except for those obligations of Purchaser that have previously accrued hereunder.

## 22. PRESENTATION OF THIS AGREEMENT.

This Agreement shall be considered only as an offer to Purchaser and shall not be enforceable against Seller until the same and all of its terms and conditions are approved by both Seller and the Bankruptcy Court on notice to all creditors in accordance with Section 3 of this Agreement above, and this Agreement is executed and delivered by and on behalf of Seller with the receipt of the Deposit by Escrow Agent.

## 23. NO PRESS RELEASES.

No press release or public statement concerning the transactions contemplated by this Agreement shall be made by either party without the prior written approval of the other, which consent may be withheld by the other party in its sole discretion. Purchaser acknowledges that the existence of, and the terms and provisions of this Agreement and the information provided to Purchaser by Seller or otherwise obtained by Purchaser in the conduct of any investigations in connection with the transactions contemplated by this Agreement (including, but not limited to, information and material furnished to Purchaser prior to the date hereof), is confidential and proprietary to the Seller and shall be maintained in the strictest of confidence by Purchaser, provided that Purchaser may disclose such matters (i) as may be required, on advice of counsel, pursuant to applicable law or court order after giving Seller prior written notice of Purchaser's

95441064.3
95441064.7

intention to disclose such matters and giving Seller a reasonable opportunity to seek a protective order or other relief; and (ii) to Purchaser's financial advisers and attorneys in connection with the transactions contemplated by this Agreement, provided such financial advisers agree in writing to hold such information in the strictest of confidence on terms not less onerous than the restrictions contained in this provision.

24. **TIME OF THE ESSENCE.** Time, wherever specified herein for satisfaction of conditions or performance of obligations by Purchaser and Seller, is of the essence of this Agreement.

25. **COUNTERPARTS.** This Agreement may be executed by original or PDF signatures in any number of counterparts, each of which shall be deemed to be an original as against any party whose signature appears thereon, and all of which shall together constitute one and the same instrument. This Agreement shall become binding when one or more counterparts hereof, individually or taken together, shall bear the signatures of all of the parties reflected hereon as the signatories. The Parties agree that facsimile and PDF copy signatures shall have the same force and effect as original signatures.

26. **MISCELLANEOUS.** If any date herein set forth for the performance of any obligations by Seller or Purchaser or for the delivery of any instrument or notice as herein provided should be on a day other than a Business Day, then compliance with such obligations or delivery shall be deemed acceptable on the immediately next occurring Business Day. For purposes of this Agreement, the term **"Business Day"** means a calendar day other than Saturday, Sunday or any State of New York or Federal holiday for which financial institutions or post offices are generally closed for observance thereof. This Agreement amends and restates the Agreement of Sale between Seller and Purchaser dated September 19, 2016 in its entirety, and the same is null and void and of no further force and effect.

[SIGNATURE PAGE FOLLOWS]

95441064.3
95441064.7

**IN WITNESS WHEREOF**, the parties hereto have hereunto set their hands and seals as of the date first above written.

SELLER:

**EASCO BOILER CORP.**, a New York corporation

By: _Arlington Leon Eastmond Jr._
Name: Arlington Leon Eastmond, Jr.
Title:   Authorized Signatory

PURCHASER:

**1225 RANDALL AVENUE, LLC**, a New York limited liability company

By: _____
Name: Rami Segal
Title: Member, duly authorized

Escrow Terms of <u>Section 2.2</u> Agreed to:

**DAY PITNEY LLP,**
**Escrowee**

By: _____
Name: James Carlon, Esq.
Title: Partner

[SIGNATURE PAGE OF SALE AGREEMENT]

95441064.3
95441064.7

# EXHIBIT A

## LEGAL DESCRIPTION

### Parcel "A"

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of the Bronx, County of Bronx, described as follows:

BEING known and designated as Lot #168, Block 2765 B, Sec. 10 on the Tax Map of the City of New York for the Borough of the Bronx, as said Map was on 5/21/51 and more particularly bounded and described as follows:

BEGINNING at the corner formed by the Intersection of the northerly side of Randall Avenue, 100 feet wide with the westerly side of Barretto Street, 60 feet wide;

RUNNING THENCE northerly along the westerly side of Barretto Street, 97.83 feet;

THENCE westerly at right angles to Barretto Street, 100 feet wide;

THENCE southerly at right angles to Randall Avenue, 97.83 feet to the northerly side of Randall Avenue;

THENCE easterly along the northerly side of Randall Avenue, 100 feet to the point or place of BEGINNING.

### PARCEL "B"

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough and County of Bronx, City and State of New York, bounded and described as follows:

BEGINNING at a point formed by the intersection of the easterly side of Casanova Street with the northerly side of Randall Avenue;

THENCE northerly along the easterly side of Casanova Street, 100 feet;

THENCE easterly parallel with the northerly side of Randall Avenue, 100 feet to the center line of the block between Casanova and Barretto Street;

THENCE southerly along the center line of the block, 100 feet to the northerly side of Randall Avenue;

THENCE westerly along the northerly side of Randall Avenue, 100 feet to the point or place of BEGINNING.

# EXHIBIT A-1

## PERMITTED EXCEPTIONS

1. Metal fence encroaches 0.3 of a foot onto Randall Avenue and 0.6 of a foot onto Barretto Street.
2. Overhead utility lines protrudes up to 1.4' onto Premises.
3. Anchor pole & guy wire protrude 2.1' onto Premises.